CASE 61.—EXPARTE PROCEEDINGS BY CITY OF PADUCAH
    TO DETERMINE THE VALIDITY OF AN ORDI-
    NANCE.—May 2.

# Exparte, City of Paducah

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

From the judgment the city appeals. Affirmed.

1   Statutes—Subject in Title—Amendment—Const., section 51,
    provides that no law shall relate to more than one subject,
    which shall be expressed in its title. In 1904 the General
    Assembly adopted the Kentucky Statutes as the law of the
    State, and provided that any of the chapters or sections
    therein might be amended or repealed by reference to and
    citation of the chapter or section, without giving the date or
    title of the act from which the chapter or section was taken.
    Held, that the title of Laws 1906, p. 439, c. 123, entitled
    "An act to amend and re-enact section 3140 of the Kentucky
    Statutes," was not defective.

2.  Municipal Corporations—Power of Legislature—Police Force—
    Number—Const., section 156, declares that cities and towns
    of the commonwealth shall be divided into six classes; the
    organization and powers of each class to be provided for by
    general laws so that all municipal corporations of the same
    class shall possess the same powers and be subject to the
    same restrictions. Held, there being no conditional limitation
    on the right of the General Assembly to enact laws for the
    government of cities and towns, it was competent for the
    Legislature to fix the number of policemen in cities of the
    second class by Laws 1906, p. 439, c. 123, amending Ky.
    Stats., 1903, section 3140.

JAMES CAMPBELL, JR., City Solicitor.

POINTS AND AUTHORITIES CITED.

1. The sufficiency of the title of the act of the Legislature as to the subject matter of the act. (Kentucky Statutes, section 3140; Kentucky Constitution, section 51; Pennington v. Woolfolk, 79 Ky., 13; Humboldt Bldg. Assn. Co., of Cincinnati; Ohio v. Ducker's Ex'or., et al., 82 S. W., 969; Constitution of 1850, section 37, article 2.)

2. Whether the right of local self-government was abridged by said act. (City of Lexington v. Thompson, 113 Ky., 540, 24 Ky. Law Rep., 384, 68 S. W., 477; Neumeyer v. Krakel, 23 Ky. Law Rep., 190, 62 S. W., 518; Constitution, section 160; People ex rel. Drake v. Mahaney, 13 Mich., 481; People ex rel. Park Commissions v. Detroit, 28 Mich., 228, 15 Amer. Rep., 202; LeRoy v. Hurtbut, 24 Mich., 44; Detroit Board of Metropolitan Police v. Wayne Co. Auditors, 68 Mich., 576, 36 N. W., 743; People ex rel. Wood v. Draper, 15 N. Y., 532; People ex rel. McMullen v. Shepard, 36 N. Y., 285; Rathbone v. Wirth, 150 N. Y., 459, 34 L. R. A., 408; State ex rel. Attorney General v. Moores, 55 Neb., 480, 41 L. R. A., 624 (overruled); Smyth v. Kennedy, 83 N. W., 87 (overruled); New York Constitution, section 1, art. 1, section 1, art. 13; Newport v. Harton, 50 L. R. A., 740; O'Connor v. Fon du Lac, 53 L. R. A., 831; Wisconsin Constitution, sec. 9, art. 13; Americus v. Perry, 57 L. R. A., 230; State ex rel. Atwood v. Hunter, 38 Kan., 578, 17 Pac., 177; Dillon on Municipal Corporations, 4th Ed., secs. 58 and 60; Terre Haute v. Kolsen, 130 Ind., 454, 14 L. R. A., 566; Baltimore v. State ex rel. Board of Police, 15 Md., 376, 74 Amer. Dec., 572; State ex. rel. Attorney General v. Covington, 29 Ohio St., 102; New York Constitution of 1846, art. 10; Note to Bulkeley v. Williams, 48 L. R. A., 482; Reddell v. Moores, 55 L. R. A., 740; this is the Neb. Case overruling the two former Neb. cases.)

J. WHEELER CAMPBELL, attorney for Police and Fire Commissioners of City of Paducah.

POINTS AND AUTHORITIES CITED.

1. I deem it scarcely worth while to refer to the oft repeated and time honored rule of construction of statutes, that resolves all doubts in favor of the constitutionality of the act of the Legislature. The courts have gone in many instances to great latitude in holding that certain subjects are within the fair intendment of the title.

2. The sovereign power of the Legislature should not be

hampered or uselessly obstructed by any restriction upon the form of its enactments, except such as are necessary to prevent the fraud, ignorance or corruption, and to this end section 51 of the Constitution was adopted.

3. Can the City of Paducah without legislative sanction employ cr appoint any policeman or provide revenue by taxation for their pay? The city is the creature of the Legislature. The corporate entity was begotten by charter granted. Without charter she is powerless—all her powers are, so to speak, new powers, and when that charter provides a "specific, full and adequate mode of executing the power given, the fact that a particular mode is prescribed will be regarded as excluding by implication the right to resort to any other mode of executing the power or of enforcing the right." (Pennington v. Woolfolk, 79 Ky., 13; Police Commissioners v. City of Louisville; 3 Bush, 598; City of Paducah v. Evitts, 86 S. W., 1123; Johnson v. City of Louisville, 11 Bush, 527; Acts Kentucky Legislature 1906.)

EARL PALMER, President of Board of Aldermen by WHEELER, HUGHES & BERRY.

### POINTS AND AUTHORITIES.

1. "An act of the Legislature cannot be amended by reference to the section and chapter." (Pennington v. Woolfolk, 79 Ky., 13; Section 51, Constitution of Kentucky.)

2. "The right to select municipal officers, prescribe the number and fix the pay, is constitutional and cannot be changed nor abridged by the Legislature." (City of Lexington v. Thompson, 113 Ky., 540.)

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Affirming.

Paducah is a city of the second class. In April, 1906, its general council enacted an ordinance providing that "from and after the passage, approval, and publication of this ordinance the number of the Paducah police force shall not exceed 18 men; but there shall be in addition thereto one chief of police, one captain of police, one lieutenant of police." Pur-

suant to this ordinance, the police force was reduced to the required number. At its session of 1906, the General Assembly of the commonwealth of Kentucky amended section 3140 of the Kentucky Statutes, contained in the charter of cities of the second class. The title of the act is as follows: ''An act to amend and re-enact section 3140 of the Kentucky Statutes.'' This section, as amended, provides: ''The number of firemen and policemen and officers of either department may be such as the general council may from time to time ordain, and may be increased or diminished on petition of the commissioners in that behalf, and said general council shall by ordinance provide for the payment of salaries of the firemen and policemen and officers of either of' said department, and other expenses: Provided, that the number of' policemen and detectives shall not be less than thirty in addition to the chief of police, captain of police, and lieutenant of police.'' Laws 1906, p. 439, c. 123. This act was approved March 22, 1906. The city filed this ex parte proceeding for the purpose of having determined whether the ordinance or statute controlled the number of policemen the city of Paducah shall have. The lower court held that the legislative act repealed the ordinance; and, from this judgment, the city appeals.

The validity of the legislative act is assailed upon two grounds: First, that the title is defective; second, that it is an unwarranted interference with the right of local self-government. Section 51 of the Constitution provides, in part, that: ''No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title.'' In considering a like objection made to an act passed under the Constitution of 1850, which contained a

vol. 125—33.

provision similar to section 51 of the present Constitution, this court, in Pennington v. Woolfork, 79 Ky. 13, said: ''The design of that provision of the Constitution, which requires that the subject of each act shall be expressed in the title, is to prevent the use of deceptive titles as a cover for vicious legislation by enabling members of the General Assembly to form an opinion of the nature of a bill from merely hearing it read by its title.'' Accepting this general reason for the adoption of the constitutional provision, and applying it to existing conditions, it is apparent that members of the Legislature are better prepared to understand the purpose and meaning of an act that amends or repeals a section of the Kentucky Statutes when the title specified the section than they would be with almost any other title that could be adopted. The Kentucky Statutes is a compilation of the general laws of the State, divided into chapters, but arranged in consecutive sections, and is a book in general use throughout the State; in fact, the only one purporting to be a compilation of the statute laws. In 1904 the General Assembly, by an act, adopted the Kentucky Statutes as the law of the State, and provided that any of the chapters or sections therein might be amended or repealed by reference to and citation of the chapter or section, without giving the date or title of the act from which the chapter or section was taken. When the Legislature amends or repeals a section of the Kentucky Statutes, and the title of the repealing or amendatory act mentions the section affected, the members of the General Assembly can at once conveniently examine the statute and ascertain the nature of the amendment; whereas, if it was necessary that the title of the act should refer to the title of the act proposed to be amended, it

would require some effort and delay to find the act, and then locate the section affected. We therefore conclude that the intention of the constitutional provision will be fully carried out when the title of an act calls attention to the section or chapter of the Kentucky Statutes to be repealed or amended. Section 3140 of the Kentucky Statutes of 1903 related solely to the number of firemen, policemen, and officers, and their salaries; and the title of the legislative act expressed as fully the subject-matter of the act as if it had declared that it was an act regulating the number and salaries of the firemen and policemen in cities of the second class; and every member of the General Assembly who heard the title read could promptly and conveniently find the section of the statute affected by the act, and what it treated of.

A consideration of the second objection opens up a wide and complicated field of investigation; but we think that, by the application of a few well-settled principles, the difficulty in determining the validity of the act in question may be disposed of. The Constitution does not undertake to prescribe the power that the Legislature may exercise over municipal corporations. The only provision contained in it pertinent to the question under consideration is contained in section 156, declaring, in part, that "the cities and towns of this commonwealth for the purposes of their organization and government shall be divided into six classes. The organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restriction." It will thus be seen that there is no conditional limitation upon the right of the General Assembly to enact laws for the govern-

ment of cities and towns. This being true, the only obstacle in the way of the State interfering to control all the affairs of municipal government is found in the principles announced by the courts that the right of the State to direct by legislation the affairs of these municipal corporations is confined to the powers that they exercise as a part of the State government, and does not extend to functions performed by them merely for the convenience and benefit of the inhabitants.

In the widely quoted case of People v. Common Council of Detroit, 28 Mich. 228, 15 Am. Rep. 202, the court, through Judge Cooley, said that: "Though municipal authorities are made use of in state government, and as such are under complete state control, they are not created exclusively for that purpose, but have other objects and purposes peculiarly local, and in which the state at large, except in conferring power and regulating its exercise, has legally no more concern than it has in the individual and private concern of its several citizens. Indeed, it would be easy to show that it is not from the standpoint of the state's interest, but from that of local interest, that the necessity of incorporating cities and villages most distinctly appears. The twofold character of these corporations as organizatzions on the one hand for state purposes, and on the other for the benefit of the individual incorporators, is invariably recognized by this court wherever there has been occasion to refer to it. And municipal corporations, considered as communities, endowed with peculiar functions for the benefit of their own citizens, have always been recognized as possessing powers and capacities and as being entitled to exemptions distinct from those which they possess or can claim as conveniences

of state government." In Dillon on Municipal Cor-
porations, section 58, it is said: "Questions have
arisen under special constitutional provisions respect-
ing the authority of the Legislature over municipal
offices and officers. And here it is important to bear
in mind the before-mentioned distinction between
state officers; that is, officers whose duties concern the
state at large, or the general public, although exer-
cised within defined territorial limits, and municipal
officers whose functions relate exclusively to local con-
cerns of the particular municipality. The administra-
tion of justice, the preservation of the public peace,
and the like, although confided to local agencies, are
essentially matters of public concern. While the en-
forcement of municipal by-laws proper, the establish-
ment of gasworks, waterworks, the construction of
·sewers and the like, are matters which pertain to the
municipality as distinguished from the state at
large." And so, in City of Lexington v. Thompson,
113 Ky. 540, 68 S. W. 447, 24 Ky. Law Rep. 384,
57 L. R. A. 775, this court said: "A municipality
has a dual character. In its character as a state
agency, it exercises governmental, political, public,
and administrative powers and duties. In its capacity
as a private corporation, it exercises rights and pow-
ers inherent in the people of the community, which
have never been surrendered to any part of the gov-
ernment, and which are property rights within the
protection of the Constitution. It may be admitted
that the line which distinguishes those matters with
respect to which cities as state agences, exercise
governmental functions, from those as to which it acts
in its private corporate capacity representing the peo-
ple of the community, is not always well defined.
The better opinion as to the police system seems to

be that inasmuch as the state is charged primarily with the preservation of public peace, and the protection of life and property of the cities, as well as in the rural districts, city police is in a large measure at least a part of the state constabulary, and its members perform the functions of state officials in the exercise of delegated state sovereignty. Therefore, in so far as the police system of our cities forms a part of the state government, they are subject to legislative control.'' Recognizing the distinction between the functions exercised by cities as agents of the state in the protection of the peace, security of property and preservation of health, and other like powers, and those performed simply for the convenience, pleasure and protection of its inhabitants, as the control and repair of the streets, alleys, and sidewalks, the construction of sewers and waterworks, it was held in the Thompson case that the Legislature did not have the power to fix the salaries of firemen, any more than it could fix the pay of street sweepers, drivers of ash carts, or the price that should be paid for the improvement of public ways. Whilst in City of Paducah v. Evitts, 86 S. W. 1123, 27 Ky. Law Rep. 867, 120 Ky. 444, the right of the Legislature to control the police system of a city as a governmental function is distinctly recognized.

In the absence of constitutional prohibition or restraint, it is difficult to draw with precision the line which separates the powers retained by the Legislature in the government and direction of cities and towns, and that placed beyond its control by the acts granting to the people of these localities the right to exercise a large measure of governmental functions in the management of their internal, and what may be termed domestic, affairs; and this free from super-

vision and control of the legislative department of the State in as large a measure as the affairs of a private corporation. In view of the intricate nature of the question under consideration, and the danger in attempting to lay down any general rules that could not with safety or propriety be applied to a state of facts not here directly involved, we have kept in mind the admonition of Judge Dillon that: "In dealing with questions of this delicate and complex nature, we must beware of broad propositions, and avoid general speculations; the wise and safe course being to keep near the shore, and within the light of actual adjudication." The right of local self-government is strongly established in this State, and has been amply recognized in a long line of decisions; but in matters concerning the administration of justice, the preservation of the peace, and the like, the right of legislative control has been freely granted and exercised, and this view is in harmony with the general current of authorities. Americus v. Perry, 114 Ga. 871, 40 S. E. 1004, 57 L. R. A. 230; Newport v. Horton, 22 R. I. 196, 47 Atl. 312, 50 L. R. A. 330.

We therefore conclude that it was competent for the Legislature to fix the number of policemen in cities of the second class.

The judgment of the lower court is affirmed.