### Edrington, et al. v. Payne, et al.

(Decided June 12, 1928.)

Appeal from Hickman Circuit Court.

1.   Statutes.—Acts 1922, c. 2, amending Acts 1918, c. 64, sec. 18, by
     reference to title of the former act and by incorporation of the first
     paragraph thereof which relates to proceedings in county court
     when exceptions are filed to report of appraisers in drainage dis-
     trict proceedings, held not to violate Constitution, sec. 51, re-
     quiring re-enactment and publication at length of so· much of
     statute as is revised or amended by reference to its title, though
     second paragraph of the original section which relates to appeals
     from judgment of the county court was omitted, and paragraphs
     were not classified as subsections.

2. Statutes.—Question whether so much of act as is revised or amended has been re-enacted or published at length on amendment of statute, as required by Constitution, sec. 51, is for the court, under all the facts of the case.

3. Statutes.—Amended act need set out only so much of the original section as is revised or amended under Constitution, sec. 51, though reference is made to title only.

4. Appeal and Error.—In absence of complete transcript, court on appeal presumes that the missing parts of the record sustain the judgment of the trial court.

5. Drains.—In proceedings for establishment of drainage district under Drainage Act March 26, 1918 (Acts 1918, c. 64), sec. 18, as amended by Acts 1922, c. 2, levy made to cover other items besides cost was properly set aside as excessive.

J. D. VIA and F. B. MARTIN for appellants.

JIM SHELTON, VANDORN CRAIG, ROY SHELBOURNE and ROB WILLINGHAM for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

On November 28, 1923, F. G. Edrington and others filed a petition in the Hickman county court for the establishment of a drainage district on Obion creek and certain tributaries under the Drainage Act approved March 26, 1918 (Acts 1918, p. 192). Viewers were appointed, who reported to the court. Several petitions were filed for extending the district, and on these additional reports were filed, all of which were confirmed by the court. On February 7, 1927, the appraisers filed a report as provided in sections 16 and 17 of the act. On March 7, 1927, J. H. Payne and others filed their exceptions and petition to dismiss the proceeding as to a large part of the district as provided by the act approved February 3, 1922, Acts 1922, p. 24. On the hearing of the case in the county court, the court sustained the petition and dismissed the proceeding as to part of the district. The applicants appealed to the circuit court, where a like judgment was rendered, and from this judgment they appeal to this court.

The first question made on the appeal is that the act of 1922 is unconstitutional under section 51 of the Constitution providing as follows:

"No law shall be revised, amended, or the provisions thereof extended or conferred by reference

to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length.''

The act of 1922 amends section 18 of the act of 1918 by reference to the title of that act and provides as follows:

"1. That section 18 of chapter 64 of the Acts of the General Assembly of 1918 be amended by adding at the end of the first paragraph thereof the following provision:

" 'Provided further, that after the report of the board of appraisers has been filed, if the owners of seventy-five per cent. of the land embraced in the said district or any part thereof which is practically separated from other portions of the district, file a petition in the court in which the proceeding is pending, stating that they desire to abandon the proposed improvement, the court shall dismiss the proceeding at the cost of the landowners,' so that the first paragraph of said section when so amended shall read as follows:''

Here follows the first paragraph of section 18 as it read in the original act with the words above quoted added thereto at the end.

This is the whole act except an emergency clause. The whole of section 18 is not copied in the new act, but only the first paragraph of that section. The section is divided into two paragraphs. The first paragraph regulates the proceedings in the county court when exceptions are filed to the report of the appraisers. The second paragraph regulates appeals taken from the order of the county court in such cases, and gives the form of orders to be entered. See Acts of 1918, pp. 229-236. The question presented is, was it nesessary in the amending act to set out the whole of section 18, or was it sufficient to set out therein only the first paragraph of section 18? The Kentucky Statutes is a compilation of the laws of the state divided into 137 chapters and about 5,000 sections. By repeated decisions of this court, it has been held sufficient to amend any section of the Kentucky Statutes by giving its number and setting out the section as amended, although the effect of the amendment may be to repeal other provisions of the Kentucky Statutes or modify them. Ex Parte City of Paducah, 125 Ky. 510,

101 S. W. 898, 31 Ky. Law Rep. 170; Com. v. McNutt, 133 Ky. 707, 118 S. W. 978; State Board v. Combs, 193 Ky. 548, 237 S. W. 32; Morrison v. Com., 197 Ky. 108, 246 S. W. 128; Jefferson Co. v. Cole, 204 Ky. 27, 263 S. W. 1114.

In Commonwealth v. Burk's Springs Distilling Co., 137 Ky. 224, 125 S. W. 306, an act amending section 1 of an act approved March 22, 1924, without setting out any other sections of the act, except section 1, to which certain words were added, was upheld. In re Barker, etc., 132 Ky. 220, 116 S. W. 686, 1176, the court had before it an act to amend and re-enact certain subsections of section 2380, Kentucky Statutes. These subsections were amended and set out at length, but no other provision of section 2380 was set out. The act was upheld. In Kentucky Heating Co. v. City of Louisville, 174 Ky. 144, 192 S. W. 4, the first section of the act of 1898 was amended without re-enacting the other sections of the act, and the amendment was sustained. By the act of 1920, subsection 1 of section 1137, Kentucky Statutes, was amended by reference to its title, without setting out in the amended act any part of the section, except subsection 1; the act was upheld. Kokas v. Com., 194 Ky. 44, 237 S. W. 1090. The above cases are in accord with the weight of authority under like constitutional provisions. In 25 R. C. L. p. 873, after reference to the minority rule, this is added:

"But a more reasonable construction is to the effect that these provisions only require that in any revising or amendatory act the new revised act or the new amended section, and not the old act before its revision nor the old section before its amendment, shall be set forth and published at full length. And, if the section amended is set out in full, it is not required that the amendatory act state that certain words of a specific section are striken out and others inserted. Under a constitutional provision to the effect that the act amended, or the section of an act amended, shall be set forth in full as amended, where an act is amended by adding new sections and altering old ones, it is sufficient to set forth the amended together with the new sections, without setting forth the whole of the act amended; it is only when all the sections of an act are amended that the entire act as amended is required to be set out."

To the same effect see 36 Cyc., pp. 1000-1060.

Under the Constitution, a statute may be amended by reference to its title only, but then "so much thereof as is revised or amended" must be re-enacted and published at length. The act of 1922 amends section 18 of the act of 1918 by reference to its title only. The question presented is, "was so much thereof as is revised or amended" re-enacted and published at length? The first paragraph of section 18 regulates proceedings in the county court when exceptions are filed to the appraisers' report. The second paragraph regulates appeals from the judgment of the county court and gives the form of judgments to be entered. In this case there was no uncertainty whatever as to what was amended. All the act that was revised or amended is published at length. No part of the second paragraph of section 18 is revised or amended. The first paragraph of section 18 is the only part of the act which is revised or amended. If in writing section 18 the author had divided it into two parts as subsection 1 and subsection 2, then clearly under the decisions above referred to the amendment of subsection 1 could be made without setting out subsection 2. But the fact that the figures 1 and 2 were not set down on this act is not material when it is printed in two plain paragraphs, and the amendment clearly shows that it relates to the first paragraph, and all that is revised or amended is republished.

The act consists of 61 sections, and covers 98 pages of the printed acts. Many of the sections are divided into subsections. Section 18 might, like many of the other sections, have been divided into two subsections. The mere failure of the author to put the words "subsection a" before the first paragraphs, and the words "subsection b" before the second paragraph, as he did in a number of other sections, is not material, so long as what is amended is clearly identified and so much as is amended is re-enacted and set out at length.

It is only necessary under the express mandate of the Constitution that so much of the act as is revised or amended must be re-enacted or published at length. In every case the question is for the court under all the facts, whether so much of the act as is amended or revised is re-enacted and published at length; and, where the Constitution is in fact complied with, the act will be upheld. In this case, the second paragraph of section 18 was in no wise amended or revised. It related to appeals

from the judgment of the county court, and gave the form of the judgment to be entered. To have copied all ·this in the amended act would have served no purpose. The members of the Legislature in voting on the amendment could in no wise have been influenced by this matter if inserted in the amendment, and the reader of the printed act would then have been none the wiser, for the amendment only related to the proceedings in the county court, and this was regulated by the first paragraph alone. The part of the act that was revised or amended was set out, and was as distinctly identified as it would have been if section 18 had been printed in subsections a and b instead of paragraphs 1 and 2. The Constitution provides how it may be amended. It may not be amended by the court. To hold that, where an act is amended by reference to its title only, it is insufficient to re-enact so much thereof as is revised or amended, and that the whole act must be re-enacted, is not to uphold, but to amend, the Constitution.

Although the title of the later act is simply an act to amend section 18 of the former act by reference to its title only, the amended act may set out only so much of the section as is revised or amended. It need not set out the whole of the section. In Walker v. Com., 192 Ky. 260, 232 S. W. 617, and Flynn v. Barnes, 156 Ky. 501, 161 S. W. 523, which it followed, no part of the old act was republished. The language of the court there was used of the facts then before the court.

It follows, therefore, that 75 per cent. of the landowners had authority to dismiss the proceedings when the report of the appraisers was filed and came before the county court for confirmation. It is true the original act allowed 30 days for the filing of exceptions to the viewers' report. Where no exceptions were filed the viewers' report became final. But the appraisers' report did not become final until it was approved by the court, and until it was approved by the court 75 per cent. of the landowners had a right to file their petition as they did here. The transcript before us does not contain the appraisers' report or the maps, surveys, and profiles upon which it was based. In the absence of a complete transcript, this court must presume that the missing parts of the record sustain the judgment of the court, and show that the part of the district named in the exceptions was "practically separated from the other portions of the

district." Both the county court and the circuit court, with the record before them, so found in substance.

The circuit court adjudged that "the levy or assessment heretofore made of 50 cents per acre" be set aside, and that a proper assessment may be made on a proper taxation of the cost. Evidently the court used the words "levy or assessment" as synonymous, and the necessary meaning of the judgment is that a proper levy may be made on a proper taxation of the cost. The levy of 50 cents was really made to cover other things beside the cost, and this excessive levy was properly set aside, with directions to the board to make the proper levy. All other questions were reserved by the circuit court. No other questions are now decided.

Judgment affirmed.

The whole court sitting.

### Dissenting Opinion by Judge Logan.

I cannot concur in the opinion of the majority of the court in this case. Section 51 of the Constitution has been so often construed by this court that it appears wholly unbelievable at this late day the court would turn its back on the long line of decisions construing that section. The court, however, has departed from the construction placed on that section in numerous opinions, and has given no reason for the departure. Section 51 of the Constitution has served a useful purpose. As now written, it was not found in any Constitution of Kentucky previous to the one now in existence. The second paragraph of section 51 is a creature of the present Constituion. It was made a part of the fundamental law to prevent changes in existing laws surreptitiously. The requirement is that the law which is amended, revised, or the provisions thereof extended or conferred must be reenacted and published at length. Literally, the provision means that any law or act which is directly amended must be published in full as it will read after the amendment is incorporated.

There has been a gradual evolution in the construction of similar provisions throughout the years. It was found that a literal construction meant the re-enactment and publication of long laws divided into different sections and divisions. Codes and statutes were adopted dividing the various acts of the Legislature into different

sections and subsections. The sections and subsections after the adoption of codes and statutes have been treated as separate laws as have been the separate sections and subsections of acts of the General Assembly before they passed into the codes and statutes. For that reason it has been permissible under the decision of this court to amend a section or subsection without setting out in full the entire act or law of which the section or subsection was a part. This court has uniformly held, however, that the entire section or subsection must be set out in full as it will read after the amendment has been made a part of it. There has been no departure from this rule.

It is remarkable that the majority opinion of the court in this case does not cite a single opinion of this court, or any other court, supporting the conclusion reached. That of itself should put the court on notice that the opinion must be wrong. Many states have similar provisions in their Constitutions, and, surely, if such a construction as has been placed on this section by the majority opinion has ever been approved by any other court, some reference would have been made to such opinions. The majority opinion will stand out alone as the only one approving such a construction of similar sections of Constitutions. The authorities cited in the majority opinion either have no bearing whatever on the question at issue or else they hold exactly contrary to what is held in that opinion. I very much fear that any careful lawyer reading the majority opinion will wonder if the court did not misconceive the meaning of the authorities cited.

The first group of cases cited in the majority opinion, beginning with Ex parte City of Paducah, 125 Ky. 510, 101 S. W. 898, 31 Ky. Law Rep. 170, and ending with Jefferson County v. Cole, 204 Ky. 27, 263 S. W. 1114, show that they have no relation whatever to the question at issue. These opinions all fall under the first rule announced in the case of Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017. That rule is that it is not necessary, when the body of the new act repeals, or has the effect of repealing, all, or part, of an existing act to republish or set forth the parts repealed, although the title of the repealing act may purport to be an amendment to the existing act. The Legislature may pass a law on any subject when it does not purport to amend any other act, but, if it is inconsistent with any

other act, such other act is impliedly repealed. When the members of the General Assembly are voting on such a bill, they know that the act, when passed, will constitute the whole law on the subject, and for that reason such an act does not fall within the provisions of section 51 of the Constitution. The case of Commonwealth v. Burk's Springs Distilling Co., 137 Ky. 224, 125 S. W. 306, cited in the majority opinion, involved the amendment to section 1 of a prior act, and section 1, as it would read after it was amended, was set out in full, and this court held that it was a compliance with section 51. In re Barker, 132 Ky. 220, 116 S. W. 686, 1176, cited in the majority opinion, has not the slightest reference in any way to the question involved in this case. The court in that case had before it the question as to whether the title of the act gave notice of an intention to amend a certain subsection of the act. The number of the subsection which was to be amended was written out in full in the title to the act, and the number was stated as "11." The enrolled bill showed that section 2 had been amended. The clerk mistook "11" written in Arabic numerals for 2 written in Roman numerals. The court said that the error was patent, and upheld the amendment to section "11." The case of Kentucky Heating Co. v. City of Louisville, 174 Ky. 142, 192 S. W. 4, is cited in the majority opinion. In that case we find the court holding that it is allowable to amend by its re-enactment and publication one section of an act without reference to other sections. The court cited Board of Penitentiary Commissioners v. Spencer, supra, to support its conclusion on that point. The question as to whether the act under consideration had been amended by a later act was not decided by the court in that case. The court said:

"But when the title of the act of 1904 is looked to, some question might be raised as to whether the attempt to amend section one of the act of 1900, was effectual, but upon this subject we express no opinion. The question is not here, and even if it should be admitted that the attempted amendment of 1904 was a nullity, the original act, as well as the amendment of 1900, would remain and leave the provisions of the act applicable to cities of the first class."

Kokas v. Commonwealth, 194 Ky. 44, 237 S. W. 1090, is cited in the majority opinion as supporting the conclu-

sion of the court. The opinion in that case cites the Spencer case, supra, and holds that the principles therein announced were conclusive of the question.

The majority opinion quotes extensively from 25 R. C. L. 873. I cannot understand how the court would offer that quotation as supporting the conclusions reached in the majority opinion. The quotation begins with the statement that a reasonable construction of such sections of Constitutions require that in any revised or amendatory act the new revised act or the new amended section must be set out in full. That is, what I am trying to say must always be done. The quotation from R. C. L., however, is dealing with a matter wholly foreign to the question under consideration in this case, as a casual reading of the quotation will show. Some courts have always held that the section or act before it is amended shall be set up and published at length in the new act, and that the act or section must also be re-enacted and set out at length as it will read after it has been amended. This means that some courts hold that the old act must be published at length as well as the new act. The quotation from R. C. L. states the rule to be that in a majority of the jurisdictions it is not necessary to set out at length the old act, but the new act as it will read when amended must be set out.

The court cites the case of Walker v. Commonwealth, 192 Ky. 257, 232 S. W. 617, as sustaining its conclusions. No authority could be more positive against the holding of the court in the majority opinion than the opinion in that case. The court said there in so many words:

"Fourth, we have uniformly held that a new act which purports to amend an existing act or part of an existing act, must set forth the *whole of the existing act as it will appear when extended, revised or amended.*"

The trouble with the majority opinion is that it holds that it is not necessary to set forth the whole of the existing section or act as it will appear when extended, revised, or amended. The court also cites Flynn v. Barnes, 156 Ky. 498, 161 S. W. 523. That case was written by the same judge who now as commissioner writes the majority opinion of the court in this case. The majority opinion passes over weighty constitutional matters by the naive

statement that the "language of the court there was used of the facts then before the court."

We have referred to the authorities cited in the majority opinion, and they are there for any one to read and determine for himself whether they, or any of them, remotely sustain the conclusions of the court as expressed in the majority opinion.

I shall not attempt to mention each individual case where a contrary doctrine has been announced by this court, but will be content to call attention to the Spencer case, supra. The court in that case reviewed all of the cases previously decided construing section 51 of the Constitution. The court then sought to set down certain rules for the guidance of the General Assembly, the courts, and the legal profession generally. It was thought that the opinion in the Spencer case had made clear and definite the proper construction of section 51. The rule announced in that case, which is the correct rule, and to be adhered to, is that, when a section of an act is amended, the whole section must be published at length showing how it will read after the amendment has been made a part of it.

I said I would not go back beyond the Spencer case, but I will mention the case of Board of Trustees v. Scott, etc., 125 Ky. 545, 101 S. W. 944, 30 Ky. Law Rep. 894, where the court, after a lengthy discussion of the proper construction of section 51, and after holding that it was permissible to amend the section, and stating how it should be done, concluded by saying: "*But the whole section amended must be re-enacted.*"

Later than the Spencer case the court, in the consideration of Hickman v. Kimbley, 161 Ky. 652, 171 S. W. 176, again determined the proper construction of section 51. In addition to following the rules announced in the Spencer case, the court added this to the many other opinions to the same effect:

"When the Legislature desires, by alteration or addition, to amend a section of an act without referring to the Kentucky Statutes, or a section of the act as it appears in the Kentucky Statutes, it may do so by amending the section of the act as it appears in the act under a title that will identify clearly the title of the act proposed to be amended, or it may amend the section according to its number in the Kentucky Statutes, under a title giving the section

of the Kentucky Statutes proposed to be amended;
*and, whichever method is adopted, the body of the
new act should contain the section as it will read
when revised or amended, if it is the purpose to re-
enact or leave in force any part of the section
amended or revised.*"

Judge Clay, writing for the court in that opinion,
more clearly expresses the correct rule than it will be
found elsewhere, and it is even more clearly expressed
there than it is in the case of Flynn v. Barnes, supra,
where the opinion was written for the court by Judge
Hobson, although the rule was very clearly expressed in
the latter case.

The effect of the opinion in this case is to uphold an
act which amends a section without setting out the sec-
tion as it will read when amended. About a dozen sen-
tences of new matter are inserted in the middle of the
section. As I see it, the violation of section 51 could not
be more flagrant, and heretofore that has been the
opinion of this court. If the General Assembly can select
one rhetorical paragraph out of a section, and make some
change in that particular paragraph, and set it out as it
will read after it is changed, it can just as lawfully select
a sentence and amend the one sentence by adding to, or
striking from, it and set out the sentence as it amended.
If it can amend a paragraph or a sentence without setting
out the entire section as it will read when amended, it can
likewise amend one word by striking it out and substi-
tuting another therefor. That is the logical construction
of the majority opinion, and it needs no argument to con-
vince any one that such a construction means the entire
destruction of section 51 of the Constitution. That sec-
tion was placed in the Constitution to prevent the doing
of that which the majority opinion exactly allows. Not
only is the majority opinion unsound law, but it is a seri-
ous menace to the commonwealth. The members of the
General Assembly are none too well advised as to law-
making, and, if those with a lifetime of training seek to
take advantage of the door which has been opened by the
majority opinion, strange things will be done by members
of the General Asembly without their knowing that they
have been a party to the things done.

The majority opinion holds that this court will de-
termine in each case whether the General Assembly has

set out at length and re-enacted as much of the law as is amended. That leaves the General Assembly without any standard by which to measure its acts. The rules heretofore established by this court for the construction of section 51 have become well established. These rules are reasonable, and easily understood. In effect, they are that, if an entire act is amended directly, it will be legal to set out the provisions of the entire act as it will read with the change or changes included. If a section of an act or statutes or codes is amended, it will be sufficient if the entire section is set out in full and published at length, including the change, or changes. If a subsection is amended, it will be sufficient if the entire subsection is set out in full and published at length, including the change or changes. This court has heretofore made the rules so clear that a person of meager intelligence may follow them. But the majority opinion in this case will bring chaos where order previously existed.

The reasonable and logical construction of section 51 is that which this court has heretofore placed on it That is to say, that, if a law is amended, and by "law" is meant the entire act, so much of it as is amended shall be re-enacted and published at length. So much of the law refers under the previous decisions of this court to sections and subsections. Further than that this court has never gone until the majority opinion in this case was written, and it cannot go further without unsettling existing conditions and bringing about utter confusion.

If the majority opinion should hold that section 18 of the act of 1918 is that which was set out and published at length in the act of 1922, the opinion would be sound, or at least there would be authority to support it. But that is not the effect of the majority opinion. The effect of the opinion is to hold that the old section 18 of the act of 1918 is all in effect with the few lines added in the middle of it by the act of 1922.

For the reasons given, and there are many others which could be given and better expressed, I must respectfully dissent from the majority opinion. Judges Dietzman and McCandless authorize me to say that they concur in this dissent.