## Fitzpatrick et al. v. Costigan et al.

(Decided June 21, 1929.)

FOWLER, WALLACE & FOWLER for appellants.

ROBT. H. WINN, W. B. WHITE, ROY G. KERN, HENRY WATSON, W. C. HAMILTON and GRUBBS & GRUBBS for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Thomas W. Fitzpatrick, his wife, Susie M. Fitzpatrick, and S. P. Greenwade have appealed from a judgment ordering their property sold to satisfy liens thereon, and from an order confirming the sales made thereunder. This action was begun by John Costigan and 12 other lien creditors of the appellants to enforce liens they had on the property of the appellants. The appellants and 14 of their lienholders other than the plaintiffs were made defendants. Appellants were heavily indebted. With commendable diligence, they endeavored to pay and did pay many of these complaining creditors, so that John Costigan and many of his associates have been paid in full, and now serve no purpose here, other than to lend their names to the style of this appeal.

Their first attack is upon the judgment, which they allowed to go against them by default. They say that personal judgment was taken by many of the defendants upon their answers and cross-petitions without the appellants having been served with process thereon. The defendants and cross-petitioners who took personal judgments and the circumstances under which they took them are: on May 19, 1926, W. C. Clay filed his amended answer, which by order of the court was made a cross-petition against the defendants, now the appellants, and process was awarded thereon. This was served on Thomas W. Fitzpatrick and Susie M. Fitzpatrick on June 9, 1926, and upon S. P. Greenwade on June 23, 1926. Sally G. McCormick took similar steps and was awarded similar orders on May 24, 1926. The process issued in her behalf was served on Thomas W. Fitzpatrick and Susie M. Fitzpatrick on June 9, 1926. She took judgment against Thomas W. Fitzpatrick only, and that has since been paid. A like step was taken by Laura Gibbons on May 18, 1926, and the process awarded her was served on Thomas W. Fitzpatrick on June 9, 1926, and he was the only one against whom she took a personal judgment.

The Traders' National Bank took such a step on May 24, 1926, and the process awarded it was served on Thomas W. Fitzpatrick and Susie M. Fitzpatrick on June 9, and upon S. P. Greenwade on June 15. These were the only personal judgments taken. They were taken on May 28, 1927, and at that time these parties were before the court, so that disposes of the first contention.

Their next complaint is that liens were adjudged to the Mt. Sterling National Bank, the city of Mt. Sterling, T. C. Lyons, Charles P. Humphries, Nellie Greenwade, Ella R. Thomas, and Laura Gibbons upon the properties of appellants before appellants had been served with process or entered their appearance to these claims, and without these lienholders having been required to plead to the petition, and without their having done so. As to Ella R. Thomas, the lien adjudged her was adjudged to be for the use and benefit of Betty Fitzpatrick, Ella R. Thomas having on December 11, 1925, assigned to Betty Fitzpatrick the benefit of an execution Ella R. Thomas then had in the hands of the sheriff of Montgomery county. Betty Fitzpatrick was the equitable owner of this execution, and she had been made a defendant when the petition was filed. Appellants cannot complain here of any judgment rendered in favor of the Mt. Sterling National Bank, as they have not made it a party to this appeal. The others to whom liens were adjudged, and of which the appellants have complained, had filed their pleadings and asserted their liens upon the following dates: Nellie Greenwade, city of Mt. Sterling, Laura Gibbons and Charles Humphries, on May 18, 1926; T. C. Lyons, on May 27, 1927; and Betty Fitzpatrick, on November 29, 1926. In this answer, she asserted the Ella R. Thomas execution. Thus it appears that appellants were simply mistaken about the condition of the record. Plaintiffs and cross-petitioners were entitled to judgments, however, whether these defendant lienholders answered or not. See McKibben v. Worthington, 103 Ky. 356, 45 S. W. 233, 20 Ky. Law Rep. 61. This disposes of the second complaint.

As we have said, the appellants worked hard to pay off their debts. This suit was begun by a number of junior lienholders, and of these they had paid all, except two, and seem to have satisfied those two; hence they may have felt that they were in no further danger, and as this judgment was entered at the instance and request

of parties who had originally been sued as defendants, appellants question it, and contend they had no right to the judgments entered; but they overlook the fact that these parties who had originally been made defendants, had filed their answers, asserted their liens, and prayed that their answers be made cross-petitions against appellants, for process thereon, and appellants were brought before the court on these cross-pettions by service of process, as we have shown above. By these steps, these original defendants, assumed the role of plaintiffs, and were as fully empowered and authorized to take up the battle. when the original plaintiffs abandoned it, and thereafter to carry it on to conclusion, as if they had been plaintiffs originally. See Lorton v. Ashbrook, 220 Ky. 830, 295 S. W. 1027. That disposes of their third contention.

Their next complaint is that in the original petition it is not alleged that the debts secured by the liens held by the senior lienholders who were made defendants were due. Therefore appellants say the petition was so defective as to not authorize or support the entry of a judgment upon it. There were divers liens on this property, and few of them were of the same rank. It seems that many of them were due when the action was begun, and all the debts of those lienholders who took personal judgments were due, as appears to us from the answers and cross-petitions which they filed; but there were some debts that were not due. and in the preparation of the petition and of these various answers and cross-petitions steps were taken to secure a sale of this property, upon which the debts were not due, subject to the lien of the prior or superior lienholders. Such a course is authorized by subsection 3 of section 694 of the Civil Code. In their attack upon this judgment, the appellants have attacked this much of subsection 3 of section 694 as unconstitutional:

"But the holder of a prior lien may enforce the same when the debt thereby secured is due, notwithstanding the existence of inferior liens, whether the debts secured thereby are due or not; and the holder of an inferior lien, when the debt thereby secured is due, may enforce the same by a sale of land subject to a prior lien or liens thereon, where the debt or debts secured thereby are not yet due."

These words were added to section 694 by an act passed in 1916. See chapter 105, page 656, Acts of 1916. This act, the appellants contend, violates section 51 of the Constitution of Kentucky, because the title of the act is defective. That title is, "An act to amend section No. 694 of the Civil Code of Practice," and appellants say this was insufficient, and according to them this title should have been, "An act to amend, extend and re-enact subsection 3 of section No. 694 of the Civil Code of Practice," or should have been, "An act to amend section 694 of the Civil Code of Practice by adding thereto a fourth subsection." They contend the title used was a misnomer; that section 694 was not amended at all, but was re-enacted in its original form, and the matter added should have been described and enacted as a fourth subsection of section 694. We find no merit in this contention. The title used clearly indicated to every one that the Legislature proposed to amend section 694. All the subsections of section 694 are parts thereof. The last subsection is just as much a part of it as the first one, and the last sentence is just as much a part of it as the first sentence. The title used clearly indicated the purpose of the Legislature to make some change in section 694. The word "amend" means to change or alter, to improve or better, to correct, to supply a deficiency. The use of this word "amend" in this title indicated the Legislature was dissatisfied with section 694 as it was; that it regarded it as needing a change. The act passed showed that the change which the Legislature regarded as needed in order to promote the better administration of justice was to extend this section and to supply what the Legislature regarded as a deficiency in the existing section, and they did that by re-enacting the section just as it was and adding thereto those things which it deemed wise and needful to meet what it regarded as a deficiency.

We find the title was sufficient and the act constitutional, and we regard the case of Ex parte City of Paducah, 125 Ky. 510, 101 S. W. 898, 31 Ky. Law Rep. 170, as upholding this view. The act there in question was an act to amend and re-enact section 3140 of the Kentucky Statutes. The amendment there consisted merely of an addition to the previous act. The wording of the previous act was not changed in any way, but merely an addition was made to it. That was held constitutional, and the reasoning of that opinion has very largely con-

tributed to the result we have reached. Thus it would not be necessary that this title contain the word "extend," for the act involved in the Paducah case did not contain that word, and, as that act was held constitutional, that amounts to an express holding that the word "amend" includes the word "extend," and that an amendment may be accomplished by an extension. Nor was it necessary that this title should contain the word "re-enact," for section 51 of the Constitution expressly provides that so much of an act as is revised, amended, extended, or conferred shall be re-enacted and published at length. Any one who read this title knew that such parts of section 694 as were retained would have to be re-enacted, therefore the use of the word "re-enact" was unnecessary.

The court had a right to order this property sold subject to the lien of senior lienholders whose liens were not due, where that condition existed.

Their next attack on this judgment is that in rendering it the court ignored subsection 1 of section 694 of the Civil Code. Appellants say that much of the property was divisible, and that the court should have ordered it divided before directing a sale of it. The subsection relied on does empower the court under certain circumstances to have property divided for purposes of sale, but the court by this subsection is not authorized to do that when satisfied by the pleadings, affidavits filed, or a commissioner's report, it cannot be divided without materially impairing its value. In this case no affidavits relative to the indivisibility of this property were filed, nor was there any commissioner's report had, or any inquiry or investigation made on the subject. The judgment ordering the property sold gives to the various tracts numbers different from those given in the petition, and that has added much to the difficulty of examining this record. We have adopted the numbers as given in the petition, and shall refer to these lots and tracts by the same numbers used in the petition, and shall follow the number which we shall give by giving in parentheses preceded by the letter "j" the number given that tract in the judgment. Of tract No. 1 (j 9, j 10, and j 11) there is in the petition this allegation: "The plaintiffs allege and aver that tract No. 1 cannot be divided without ma-

terially impairing its value." The same allegation which is made there is repeated as to each tract up to and including tract 8. There is not before us any question relative to tract No. 5 (j 3), or tract No. 8 (j 6 and j 7), as these tracts brought less than two-thirds of their appraised value and were afterwards redeemed by the appellants.

Concerning tract No. 9, the allegations of the petition are: "Plaintiffs allege and aver that unless the defendant, Kentucky Joint-Stock Land Bank comes in and declares its mortgage due that said tract No. 9 will have to be sold as a whole, subject to the mortgage of the defendant, Kentucky Joint-Stock Land Bank; that on said tract containing 625 acres the Kentucky Utilities Company are claiming to have certain rights of way for its electric poles and water pipes, contracts for which can be found of record in Miscellaneous Record Book 6, page 181, and in Book 72, page 272. Said tract No. 9 will have to be sold subject to said rights of way."

There is nowhere in the pleadings any dispute of any of these allegations. Thus we have the undenied, unqualified, and undisputed allegations of the pleadings that tracts 1, 2, 3, 4, 5, 6, and 7 cannot be divided without a depreciation in their value, and in that situation the court properly directed them to be sold as entireties. See Hamilton v. Cunningham, 186 Ky. 570, 217 S. W. 924; Harris v. Louisville Trust Co., 181 Ky. 659, 205 S. W. 772. Concerning tract No. 9 the allegations were not so direct and unequivocal, but the facts alleged were sufficient to satisfy the court it should be sold as a whole, and it was properly so ordered.

Suppose it had been divided for the purposes of sale into tracts "a," "b," "c," "d," and "e," of 125 acres each. What would have been the result? A prospective purchaser of tract "a" would have hesitated to buy because he could not know who would be the purchasers of tracts "b," "c," "d," and "e." If these tracts were purchased by frugal and thrifty men, he could arrange with them, and he and they could contribute each his proper share, if they could agree on it, to the sum to be paid annually to the Kentucky Joint-Stock Land Bank, which would, according to the amortization plan set out in its pleadings and embraced in its mortgage, discharge its debt and free all these tracts of lien; but, as he could

not know who would purchase all these tracts, he would hesitate to make the purchase, even though he desired to purchase it, and in all probability would not bid at all, and the same is true of prospective purchasers of the other tracts. The result is evident. The court properly ordered tract No. 9 sold as a whole. So that disposes of questions directed to the judgment.

We come now to the attack made by appellants upon the order confirming the sale. Tract No 2 (j 1) was appraised at $12,000. It was sold for $8,200 to the Enoch Manufacturing Company. Appellants say this appraisment was grossly low and that this property was sacrificed. Appellants valued this property at $20,000, but some 11 witnesses were introduced, and their testimony heard by the court, before confirming this sale. In that proof it was developed that for this tract No. 2 (j 1) Fitzpatrick had paid only $9,600 in 1925. The great weight of this testimony is that this property brought its full value. On this property was a building that had been constructed many years ago at a cost exceeding $30,000; but this building was in bad repair, had been idle and vacant for many years, and the venture it was constructed to house was not successful. We are satisfied, from all this proof, that the court properly confirmed this sale.

Tract No. 4 (j 2) was appraised at $9,000. It was purchased by the Traders' National Bank for $4,350, which was less than two-thirds of its appraised value, and it seems to us that, if appellants felt themselves aggrieved by this sale, they had ample remedy under section 1684, Kentucky Statutes, to protect themselves by redeeming the property. See Stortz et al. v. Voss et al., 181 Ky. 546, 205 S. W. 601.

Tract No. 5 (j 3) was appraised at $750. It was purchased by W. N. Scoble for $515. This is a vacant lot on Maysville street, upon which the city of Mt. Sterling had a superior lien to secure to it the payment of a street assessment for $324.25. Fitzpatrick testified this property was worth $1,800. W. H. Wood, a real estate man, said, if the street assessment were paid, it would be worth $1,000 or $1,200. Deducting this street assessment from his estimate, then, the value as fixed by the appraisers agrees fairly well with his value. There is but little proof directed to the value of this property. The appellee did not think his bargain of sufficient worth to brief

his case in this court. Apperently he had just as soon the judgment were reversed as not; but from this testimony we are left in such confusion about this lot that we will, under our well-known rule, accept the finding of the chancellor.

Tract No. 6 (j 4) and tract No. 8 (j 6 and j 7) have been redeemed, so we are not concerned with them.

Tract No. 7 (j 5) was appraised at $4,500. It was sold to W. C. Clay and E. B. Roberts for $3,225. Fitzpatrick testified it was worth $7,000 or $8,000; but three witnesses testified on the subject, and the average value as fixed by them was $3,900, which was $600 less than the value fixed by the appraisers; hence the court did not err in confirming that sale.

There is nothing in this record to show what tract No. 9 (j 8) brought when it was sold, and we suppose that that sale was entirely satisfactory to the appellants, as they are not complaining of it. These sales were properly confirmed. See note 13 under section 696 of the Civil Code, page 590.

Appellants allege in their exceptions to the sale that all of these properties were sacrificed, and they complain particularly of the sale of tract No. 4 (j 2), and allege that it was admirably adapted for division; that it consisted of a boundary of five acres of land just outside the city of Mt. Sterling, and that many persons who desired to bid on or to buy one or more parts of this property were excluded from bidding because of the way it was sold, and that, believing it should be divided and that the sale as a whole would be set aside for that reason, declined to bid; but they do not call our attention to the names of any such parties, nor did they name any in their evidence.

Another exception which he filed to the sale was that the lienholders constituted almost entirely the bidders at the sale, and that such parties had previously entered into arrangements with each other regarding the several tracts to be sold and what they would bid thereon, and that by reason of such collusion the property did not bring its fair value. The testimony heard when the court was considering these exceptions failed to support this claim. It is true that the greater part of this property was bought by lienholders, but in each instance the property failed to bring enough to pay the first liens against it, to say nothing of paying the second liens. In saying this, we are fully aware that tract No. 5 (j 3) was sold,

subject to a street improvement lien, and, when we say it failed to bring enough to pay the first lien against it, we mean the lien next in rank to the street improvement lien. As these lienholders were losing a portion of their debts, and second lienholders losing all theirs, we can well understand their consultations with each other about the sale, and the testimony heard indicates that about all they said in these conversations was directed to just how far they would go in their bidding. They did not want a loss, nor did they want the property. They were endeavoring to make it bring all they could, and from the testimony that seems to have been the sum and substance of these conversations.

As another exception to the sales, appellants say they had perfected an arrangement whereby they can borrow on long and reasonable terms a sum almost as large as the sum these properties brought, which sum they believed will satisfy their creditors and enable them to keep the property. These exceptions were filed on November 9, 1927. The court did not pass upon them for 30 days, and doubtless that time was given in order that appellants might have opportunity to perfect their arrangements, and it is stated in brief that the court said that, if they did so, he would sustain the exceptions. We do not have to say whether or not the court had authority to do that, for the appellants never did perfect their arrangements. The court confirmed all these sales; but as to the properties which did not bring two-thirds of the appraised value the court directed that no writ of possession should issue until the expiration of one year from the date of sale. As to the others, the court awarded writs of possession to issue upon application of the purchaser.

Finding no error in either the judgment ordering the sales or in the judgment confirming the sales, both judgments are affirmed.