# Board of Aldermen of City of Ashland et al. v. Hunt.

## Same v. Ashcraft et al.

## Same v. Adams et al.

June 21, 1940.

As Modified on Denial of Rehearing Nov. 15, 1940.

Watt M. Prichard, Judge.

722

S. S. Willis for appellants.

Martin & Smith, Frank C. Malin, J. Gardner Ashcraft and Hannah, Van Sant & McKenzie for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming in part and reversing in part.

Parties appellant in the above styled consolidated cases are members of the boards of aldermen and common council of Ashland, a city of the second class. In the first appeal, Howard Hunt claims to be the duly appointed superintendent of Public Works. Ashcraft contends that he is the duly appointed assistant city solicitor, and Vivien Adams asserts that she is the duly appointed stenographer in the same office. Van Sant, city solicitor, joined in the Ashcraft suit, and both joined in the stenographer's suit; all appellees here were plaintiffs below, and sued in their individual capacities, and as taxpayers.

Prior to January, 1940, Ashland operated under the commission and city manager form of government, changing to councilmanic form at the regular election in 1939, when a member of the Democratic Party was elected mayor, while the two boards elected were predominantly in number, members of the Republican Party.

At the beginning of the term of the newly elected officials, the mayor appointed Hunt as superintendent of public works under Section 3118, Kentucky Statutes, as it stood at that time, at a salary of $250 per month, for a term of two years. His appointment was, as provided by the then law, confirmed by the council, and he gave bond; took oath and entered upon his duties, as provided by Section 3119, Kentucky Statutes.

On January 2 the mayor appointed Van Sant solicitor for a term of four years as provided by Section 3166, Kentucky Statutes 1936, as it stood at the time. At the time of his appointment there was no provision in the statute for an assistant solicitor or stenographer in the solicitor's office. The council or commission had made allowance of $600 for stenographic work in the office, and the matter before us, in so far as it involves the contention of Ashcraft and Miss Adams, did not arise until after the passage of the Act of 1940 (Acts of General Assembly, 1940, c. 121, p. 496), which is brought sharply into controversy, as will later appear. For the present we shall state the history of the beginning and growth of the several suits.

At the first meeting of the council in 1940 there was passed what is termed "an ordinance for the temporary organization to carry on the affairs of the city * * * until a permanent organizatoin shall be created by ordinance or by the adoption of the annual budget. This was of date January 1, 1940, and known as "Ordinance No. 1." Practically the same ordinance was passed by the council on March 15 and 26, 1940, and published. This was called "Ordinance No. 8." At the same time Ordinance No. 7 was adopted.

By Ordinance No. 7, the council apparently abolished the office of superintendent of public works, by the establishment of a board of public works, as provided in Section 3125, Kentucky Statutes. When these ordinances, Nos. 7 and 8, were presented to the mayor for his approval (Kentucky Statutes, Section 3114), he vetoed them. Both were thereafter passed by the council.

Soon after the passage of Ordinance No. 1 (January 1) there was considerable activity evidenced in the General Assembly then in session, and on January 24, 1940, the Act (H. B. 93) was passed, and on the 26th was approved by the Governor, making it at once effective, since it carried an emergency clause, Constitution. Section 55. The title of the Act includes such sections of the 1936 edition of the Statutes as were repealed, amended and reenacted. The title is:

"An Act to repeal, amend and reenact Sections 3049, 3118, 3119, 3126, 3131, 3133, 3143, 3144, 3144a, and 3166 of the Kentucky Statutes, * * * all

of which sections are a part of the charter of municipalities of the second class relating to the councilmanic form of government; and declaring an emergency to exist." Acts 1940, c. 121.

These various sections related in the main, aside from the one in relation to filling vacancies generally, to the manner of appointments of various officers and employees, city solicitor, clerk, auditor, city engineer, superintendent of public works, etc. It is to be noted that .the manner and method of making some of these appointments, filling vacancies and providing compensation were altered.

In fact, the provisions took from the general council the right to either name, or to approve the selection of some appointees. In many instances these changes will be noted in the discussion of the various controversial questions.

We shall first state the Adams and Ashcraft cases. These parties filed their separate actions in April. It was alleged that Van Sant had appointed them in the manner and at the time above stated, that is, just after the amendatory act became effective. The council had notice of their appointments, followed by requests that their salaries be fixed in accord with the 1940 Act, the requests being met with refusal. Their prayers were that the council be directed by mandatory order to fix the salaries as per the 1940 Act.

Pleadings were indulged, which properly raised issues, and it is the contention of defendants, now appellants, in substance, that the Act of 1940 was wholly unconstitutional, because in contravention of Section 51 of the Constitution, which provides:

"No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title; and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

It is insisted in pleading that the title covers a multitude of subjects, and the act purports to repeal each of said sections, by reference to their numbers as they

appeared in the old law. It is said to be invalid because it undertakes to control the duties and powers of the municipal governing body, in respect of private and local rights, and distinguishable and distinguished from municipal governmental functions. It relates, in part, exclusively to local matters of no concern to the legislature, the state or the public generally. It is not within the power of the legislature to fix salaries of clerks, employees, agent and servants of the city.

We take up next the case of Hunt, who filed petition on April 2, alleging that ordinance No. 8 (practically same as No. 1) is invalid, because in conflict with the sections of the Statutes amended by the Act of 1940, and then sets out specifically—section by section—such as are claimed to violate the terms of the 1940 Act.

The pleadings carried such technical allegations as are necessary to entitle the plaintiffs to injunctive relief, plaintiff Hunt asking that ordinance No. 8 be declared invalid, and that the authorities be enjoined from carrying its provisions into effect, and from attempting to interfere with him in carrying on his duties as superintendent of public works, as defined in Section 3119, amended.

It is to be noted that appellants, in addition to denials, and other affirmative pleas, allege in the Hunt case that the council on March 15 and 26, adopted ordinance No. 7, which by its terms set up a board of public works, in conformity with Section 3125, Kentucky Statutes (unamended). It is asserted that, as provided by that section, this had the effect of abolishing the office of superintendent. In reply it is said this ordinance could and should have no effect, until after the term for which he had been elected.

After pleadings were completed, it was agreed by the parties that the three cases should be and they were consolidated. Further, (1) that no appointments of officers, employees or agents should be made until further orders of court. (2) The council may proceed with its budget and levy for the coming fiscal year, same to be readjusted as may become necessary at the close of the litigation, and to make provisions for $3,000 for pay of assistant solicitor and stenographer, if they are successful, with right of reapportionment. (3) It was agreed that Hunt should continue in his position until litigation

is ended, the salary to be as fixed; this to apply also to the foreman of street and sewer departments, and purchasing agent.

The pleadings, at least by answer, counterclaim and cross-petition of defendants, appear to have been transformed into a declaratory judgment suit, as per Section 639a—1 et seq. Civil Code of Practice, defendants complying with Section 639a—9 by serving copies on the Attorney General.

The court was called upon by the defensive pleading to define the rights of the parties by holding:

(1) That the act be declared invalid as a whole, or if not so, then in so far as it undertakes to infringe on the rights of the city's governing boards.

(2) That ordinance No. 8 be declared valid in all respects, and in full force and effect.

(3) That ordinance No. 7, establishing the board of public works (Kentucky Statutes, Section 3125), be declared valid, and that it abolished the office of superintendent of public works.

(4) That the powers of the general council to fill vacancies in the various governmental departments "except in so far as the charter provided for said appointments by the mayor prior to 1940," be declared.

(5) That the appointments of Ashcraft and Miss Adams be declared invalid.

(6) That the duties of the mayor and general council, and each board thereof, be declared and defined.

There was prior to submission further stipulation to the effect that:

(a) The individual defendants were respectively the duly elected aldermen and council, and Shanklin was the duly elected mayor, all at the November, 1939, election, and assumed office on the first Monday in January, 1940.

(b) Facts in respect of the appointments of Van Sant, Hunt, Miss Adams and Ashcraft were, as stood in the pleadings, correct, and that the council had notice of the latter appointments, but it was not to be construed as to indicate that Van Sant was reappointed,

after the amendment, if such were necessary, or as an admission that he had the right to make the appointments of Ashcraft and Miss Adams, though if he did have the right, such appointments were duly made.

(c) The general council was then aware of the position taken by the mayor as to the validity of the 1940 act, and that it required salaries to be fixed, but the board took the position that the act was invalid, and it was and is the intention of the board to fix no salaries, unless the act be held valid and binding on them.

(d) That Hunt was appointed as he had alleged, his appointment being confirmed by the board of aldermen, and he qualified and began his duties. Nothing in the stipulation was to be construed as indicating that Hunt was reappointed after the amendments; with regard to ordinances Nos. 7 and 8, is was agreed that they had been duly passed, vetoed by the mayor, and passed again over his veto.

(e) The former temporary organization (1) provided for a superintendent of public works at $250 per month, and for a foreman of streets and sewers at $170 per month, and for a purchasing agent and clerk to the superintendent of public works at $130 per month. The new ordinance (No. 8) omits these three positions, and substitutes a board of public works with each member assigned to active duty, with salaries of $200 per month for two of them, and $150 for the office man.

(f) House Bill No. 93 (Acts of 1940) was passed by the House, and was pending before the Senate, which granted a hearing in the committee of the whole. Proponents and opponents of the measure appeared before the Senate, and made addresses presenting their respective views, and the bill was debated in the Senate, prior to the final affirmative vote, and it was passed and signed by the Governor on January 26, 1940.

On June 6 the consolidated cases were submitted to the court on pleadings, evidence and stipulations. The court did not write an opinion but adjudged substantially:

(1) That House Bill No. 93 (Act of 1940, supra) is valid.

(2) That ordinance No. 8 is invalid and of no force and effect.

(3) That ordinance No. 7 though valid is of no force or effect until after the expiration of the two year term of plaintiff Hunt, and the defendants were enjoined from interfering with him in the preformance of his duties as superintendent of public works, or carrying into effect the provisions of Sections 3118 and 3119, Kentucky Statutes, including appointments of employees, as provided in the amended statutes.

(4) The boards, and individual members thereof, were directed "at their next regular meeting" to adopt an ordinance fixing Ashcraft's salary at not less than $1,800 per annum, and to provide that pay should commence as of January 27, 1940. The same order was applicable to the stenographer, pay to be from January 19, 1940, at $100 per month.

(5) Hunt was declared to be the duly elected superintendent, with salary to run at $250 per month from January 2, 1940.

(6) Van Sant was adjudged to have been duly appointed for a term of four years with salary as fixed in ordinance. He also adjudged Ashcraft and Miss Adams to have been duly appointed.

(7) Costs to plaintiffs were adjudged against all defendants individually, excepting therefrom Fannin and White. They had refused by pleading to join in the defense. There were the usual objection and exception, with appeal granted.

Conceiving that the question as to the quality of the title may be to some extent the controlling one, we shall consider it first, and it may be noted the complaint is that it relates to more than one subject, and is not indicative of the subject matter of the act. The title and constitutional provision are set out above. The chief contention is that the various amended sections deal with separate offices and official functions, and these are not expressed in the title.

At the outset it is admitted that this court, in construing Section 51, has held that one section of the statute may properly be amended by reference to the section, providing the act amends it by setting out in full

the section as it will read after amendment. But, it is argued that it "has not yet been held that a number of sections may be grouped in a single act and not violate Section 51 as to multifariousness." As exemplary, the case of Jefferson County v. Cole, 204 Ky. 27, 262 S. W. 1114, is quoted:

> "It is the settled rule in this state that the title of an act is sufficient if it purports to repeal or amend a particular section of the Kentucky Statutes, the reason being that the members of the General Assembly may at once examine the section affected and determine the nature and extent of the proposed change in the law."

To the same effect are Flynn v. Barnes, 156 Ky. 498, 161 S. W. 523, and Ex parte Paducah, 125 Ky. 510, 101 S. W. 898, 31 Ky. Law Rep. 170, and others cited in these cases, and which might be supplemented.

Appellants then cite a number of cases, among them City of Owensboro v. Hazel, 229 Ky. 752, 17 S. W. (2d) 1031, in which we held the acts in question to be in contravention of Section 51 of the Constitution, because covering more than one subject, not expressed in the title. It is not necessary to quote, since after all we find no two cases alike in facts upon which conclusions are based.

As bearing on the one question now under discussion, it appears to us to be necessary to call attention to a few cases where the legislature by amendment covered more than one section of the Statutes. In South v. Fish, 181 Ky. 349, 205 S. W. 329, the title of the act provided for amendment of four sections of the law relating to the public health. The new act greatly enlarged the scope of the original sections. The court held the title was sufficient under Section 51 of the Constitution with respect of all the sections embraced, save and except Subsection 20 of Section 2061, K. S. 1915.

In Madison County v. Hamilton, 243 Ky. 29, 47 S. W. (2d) 938, 940, the title of the act in question was:

> "An Act to amend and re-enact Sections 4130, 4135, 4143, 4146, 4147, 4148, 4151, Subsection 2 and 4250 of the Kentucky Statutes * * * all relating to revenue and taxation." Acts 1928, c. 129.

It was complained that the new act created the

office of delinquent tax collector, which subject was not clearly, if at all, expressed in the title. It is true that Chief Justice Dietzman, in writing for the court, dismissed the complaint by saying:

> "This being a general title, it is comprehensive enough to include the creation of the office of delinquent tax collector." See also Walters v. Brown, 215 Ky. 196, 284 S. W. 1017.

The sections named in the title of the act, supra, related to such matters as: Collection of taxes, time of collection, reports by the sheriff, and his settlements, and other matters, though "all relating to revenue and taxation," as the various sections of the title here in question were "a part of the charter of municipalities of the second class, relating to the councilmanic form of government." In Guess v. Linton, 236 Ky. 87, 32 S. W. (2d) 718, 719, it was contended that an act was invalid because it did not name both the chapter and section of the statute proposed to be amended. We said:

> "It has been so often held by this court that a reference to the particular section to be amended giving the number of the section in the Kentucky Statutes was a sufficient compliance with Section 51 of the Constitution that it is unnecessary to do more than refer to a few of the cases." Citing several cases which we followed in Jefferson County v. Cole, supra.

We see no reason why, because in several of the cases we used the expression "particular section" that the same rule should not apply when two or more "particular" sections were correctly identified in the act. We indicated, that by calling attention to the section to be amended, the member was put upon notice, and could, if he chose, refer to the statute and acquaint himself. It would only be a matter of time, and perhaps just a little more difficulty for the member to refer to two or more sections intended for amendment for enlightenment. We cannot go so far as to say that in the cited cases it was the intention of this court to limit the number of sections to be amended to one, or even two. To do so would in many cases result in a too narrow construction of Section 51, which we have in a majority of cases refused to give, because of the well-known rule of giving favor to the constitutionality of legislative acts,

by harmonizing the act with the title where same can be done without violence. Fiscal Court of Pendleton County v. Board of Education, 240 Ky. 589, 42 S. W. (2d) 885.

The title of the act in question did not on its face conceal its purpose from the reader, or attempt by delusive or false statement, to mislead one who read the title; it simply and clearly pointed out the various sections to be amended and reenacted, and the body of the act did these things and nothing more or less. What counsel perhaps had in mind was the rule that if two statutes be distinct, and have no connection with or relation to each other, they may not be amended in one act under a single title. C. J. 59, p. 838. Such is not the case here; on the contrary the matters contained in the body of the act were germane to each other and to the title, and the title was sufficient to give to legislators, and to such of the public as might be interested, ample notice of the purpose and extent of the act.

It is contended secondly, that since the city possesses a dual character, i. e., one of purely local functions, and the other of governmental nature, the effort of the act to interfere with purely local matters, carried it into the realm of invalidity. It is true that we have asserted that the "state may mold local institutions; but local government of a city is a matter of absolute right and the state cannot take it away." Roberts v. Louisville, 92 Ky. 95, 17 S. W. 216, 218, 13 Ky. Law Rep. 406, 13 L. R. A. 844.

In this case the question discussed was the use, control and disposition of wharf property which was acquired under an enabling act, held by the city, invested with the power of control, and not to be by ordinance, transferred. Without going into further details, it may be noted that we said, by way of quotation:

"The distinction is well established between the responsibilities of towns and cities for acts done in their public capacity, in the discharge of duties imposed on them by the legislature for their public benefit, and for acts done in * * * their 'private' character, in the management of property and rights voluntarily held by them for their own immediate profit and advantage as a corporation, al-

though inuring　*　*　*　ultimately for the benefit of the public.''

In the case of City of Lexington v. Thompson, 113 Ky. 540, 546, 68 S. W. 477, 24 Ky. Law Rep. 384, 57 L. R. A. 775, 101 Am. St. Rep. 361, which is pointed to as a landmark, and which we cited in Alvey v. Brigham, ... Ky. ..., ... S. W. (2d) ... (April 26, 1940), calling attention to the criticism of same in cases cited, and a later case coming to its rescue, we dealt with the right of the legislature to fix the compensation of members of the fire department. We held that it was beyond the power of the legislature to fix such salaries and violated the right of the city, solely on the ground that the control of the fire department was not governmental in its nature, but affecting the municipality in its private or corporate capacity.

This doctrine was upheld in the case of Campbell v. Board of Trustees, 235 Ky. 383, 31 S. W. (2d) 620, 621, which dealt with a similar subject. However, as we read appellants' brief, the argument on this point is directed in the main to the provisions of the act which relate to the appointment and fixing of salaries of the assistant solicitor, and stenographer to the solicitor, and minor officers or employees, having to do service for the public in official capacity, and we do not think there is serious contention that so much of the act as deals with the solicitor and his appointees is violative of any purely local rights of the city.

The same would follow, as we read the law and the act, with regard to each officer or employee named in the act, save and except the board styled ''commissioners of water works,'' which board, since the city owns and controls its water system, would be classed as a board operating in the private corporate capacity of the city, and provided for in Section 3143, Kentucky Statutes, and whose salaries were not to exceed the sum named in Section 3143-1.

We held in the City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004, 1009, that:

''The operation of a waterworks plant whereby water is furnished for a compensation to the citizens and their homes and in their places of business partakes of the nature of a private business. In

the conduct of such a business the city may conduct it as a private corporation or as an individual sub-ject only to legislative limitations." See also City of Mayfield v. Phipps, 203 Ky. 532, 263 S. W. 37; Dyer v. Newport, 123 Ky. 203, 94 S. W. 25, 29 Ky. Law Rep. 656.

As we read the sections of the Statutes relative to the water works commission, prior to amendment, we find that there were certain limitations and conditions placed on the board as created, but there was also the saving clause that said commissioners were to control, subject to such limitations and regulations as the council might provide. The law gave them unlimited power as to employment of assistants and help, and required them to make periodical reports.

In the questioned act there is little or no difference, except as to the manner of appointment, and the fixing of the salaries, or rather fixing the minimum. Under the authority of the Lexington v. Thompson case, supra, we are constrained to hold that it was not within the power of the legislature to fix a minimum salary for these commissioners, and while the act is otherwise valid it cannot be upheld in this respect.

We need not go into a lengthy discussion as to the character of the positions or offices held by other officers named in the act. Their status seems to be well enough fixed, and the character of employment defined in Lexington v. Thompson, 250 Ky. 96, 61 S. W. (2d) 1092; Ex parte City of Paducah, 125 Ky. 510, 101 S. W. 898, 31 Ky. Law Rep. 170; Covington Bridge Comm. v. City of Covington, 257 Ky. 813, 79 S. W. (2d) 216, and in the recent cases of Alvey v. Brigham, supra, and City of Louisville v. German, ... Ky. ..., ... S. W. (2d) ....

The act does not deny local authorities the right of appointment, nor take from them the right to exercise their discretion in the number of appointments. It merely changes the manner and method of making appointments, as will be seen from a reading of the act. In this respect only does it differ from the original act. See Board of Aldermen v. City of Covington, 129 Ky. 410, 111 S. W. 1007, 33 Ky. Law Rep. 880; Combs, Mayor, v. Bonnell, 109 S. W. 898, 33 Ky. Law Rep. 219.

The argument that ordinance No. 8 is invalid (ap-

pellees' contention) is, so far as we see it, more particularly aimed at that portion which relates to the alleged abolishment of Hunt's office, and its failure to provide salaries for Ashcraft and Miss Adams. We need not discuss the question as to whether or not the creation of the new office by the amendatory act did not carry a saving clause in behalf of the appointee. We say this, because it is admitted in stipulation, that the council after the effective date of the amendatory act, as provided by ordinance No. 8, set up a board of public works, which is authorized by Section 3125, Kentucky Statutes, which provides:

"The general council may, by ordinance, estbalish a board of public works, to consist of three members. Said board, if established, shall be appointed as said superintendent is authorized to be appointed, and for the same term. When such board is established, said office of superintendent *shall* cease. Said board, if established, shall not be abolished within six years."

Both of these sections were parts of Chapter 100 of the Acts of 1894, and it is observable that the legislature placed a saving limitation clause as to the power of the aldermanic board and the mayor to abolish the offices of water commissioners. There was no such clause in Section 3118. It is also noticeable that there was no attempt to repeal or amend Section 3125, Kentucky Statutes.

The argument of appellees to the effect that Hunt could not be removed, because he was a statutory officer with a fixed term, is, we think, fully answered in Johnson v. Laffoon, 257 Ky. 156, 157, 77 S. W. (2d) 345, 349. In this case the same question from a different angle was discussed, and quoting from authorities cited, we held:

"The Legislature, in creating the office, had the right to provide for its vacation in such manner as they saw fit, and in ascertaining what the manner is, we must take their language in its ordinary import."

Here we have no difficulty in ascertaining what the legislature intended by language used in Section 3125, Kentucky Statutes, when the board of works is estab-

lished, "said office of superintendent shall cease." The board would no doubt have been "established" before this time, but for the stipulation as to status quo.

Quoting from Standeford v. Wingate, 2 Duv. 440, we said in the Johnson case:

"An office established by the Constitution cannot be abolished by the Legislature, nor can an officer's term, fixed by the Constitution, be reduced or altered by act of Assembly. But any office established by statute may be abolished by statute, unless it be a contract, which cannot be impaired by legislation." See Board of Councilmen v. Brawner, 100 Ky. 166, 37 S. W. 950, 38 S. W. 497, 18 Ky. Law Rep. 684.

We took up the question whether or not the right to hold office was contractual, and held that such was not the case, and it is not in respect to certain city offices. To the case quoted from, which is quite comprehensive, may be added Taylor v. Beckham, 108 Ky. 278, 56 S. W. 177, 21 Ky. Law Rep. 1735, 49 L. R. A. 258, 94 Am. St. Rep. 357; Id., 178 U. S. 548, 574, 20 S. Ct. 890, 44 L. Ed. 1187; State Ins. Board v. Greene, 185 Ky. 190, 213 S. W. 218.

The argument of appellees that the ordinance, in so far as it applied to Hunt, was invalid because of Sections 161 and 235 of the Constitution, is without merit. Here the statute provided that when the board of works should be established, the superintendent of works should cease to function. There is no doubt of the power of the board to provide for and establish the board. The court held that Hunt should not be interfered with until he should reach the end of his term. In this the court was in error, and so much of that judgment should be, that upon the qualification of the board of works the office of superintendent of works ceases.

It is contended by appellees that ordinance No. 8 is invalid in its entirety, and sets out five or more reasons, all mainly going to the point that invalidity consists in failure of the ordinance to comply with the amended act, among them being the ground that the law and revenue departments were combined, and failure to provide for certain positions named in the amended act.

This argument is well answered by appellants' counsel, when he suggests that if invalid in part, because of such failures, all that becomes necessary is to supplement the same under valid portions of the Act of 1940. We see no reason for declaring the entire ordinance invalid, certainly not so under the pleadings and issues as presented to us. Any confusion may and should be eliminated by appropriate councilmanic procedure.

The argument that the appointment of the assistant solicitor and stenographer to the solicitor is invalid, because Van Sant was appointed under Section 3166 prior to amendment, and not reappointed after the new amendment, is not meritorious. In the first place the section referred to provides that the solicitor appointed thereunder, was to hold office for a term and until his successor was appointed. To all intents and purposes he was a de jure holdover when he made his appointments.

Again, the amendment, while it professed to and did repeal Section 3166, Kentucky Statutes, it at the same time amended and re-enacted it, and in so doing it is apparent that the instant amendment did not undertake to nor did it abolish the office, or change the method of filling same.

The final argument' relates to costs. The costs in the court of first instance were taxed against the individual members constituting the two governmental boards, who were made defendants. The mayor and the two members who were not joined, entered their appearances by answer. It is noted that the defendants were sued not only individually, but as constituting the two municipal boards. This was to all practical purposes a suit against the municipality.

There is nothing to indicate that the officers who undertook to test and have construed the Act of 1940 did so otherwise than in good faith, and for the benefit of the municipality. Neither Mooney v. Denhardt, 144 Ky. 263, 137 S. W. 1069, nor Chesapeake & O. R. Co. v. Harmon, 159 Ky. 59, 166 S. W. 786, Ann. Cas. 1915D, 562, have application under the circumstances here, due to which we conclude that so much of the judgment below as adjudges costs taxed against individual board members be set aside and costs taxed in the proportion of two-thirds thereof to the city and one-third against

appellee Hunt. The clerk of this court will likewise tax his costs.

So much of the judgment as holds the amendatory act of 1940 valid is affirmed; so much as decrees that Hunt holds office for the term fixed is reversed with directions to modify that portion as is above indicated. That part which holds that Van Sant had the power to appoint an assistant and stenographer is affirmed, which affirms as to the status of the assistant and stenographer.

So much of the judgment enjoining the board from carrying into effect ordinance No. 8 should be modified so as to conform to our conclusions in respect thereto.