**TRIMBLE COUNTY FISCAL COURT, Dallas Moore, Magistrate, Orvile Smith, Magistrate, Ivan Louden, Magistrate, and Morris Garrett, Magistrate, Appellants,**

v.

**TRIMBLE COUNTY BOARD OF HEALTH, Clyde Greenwood, County Judge, and Robert Moore, County Court Clerk, Appellees.**

Court of Appeals of Kentucky.

Sept. 14, 1979.

James F. Thomas, Newcastle, Bobby K. True, Bedford, for appellants.

E. Irene P. Long, Bedford, for appellee Trimble County Bd. of Health.

Hamilton, McClellan, Croley & Fendley, Bruce R. Hamilton, LaGrange, for appellee Clyde E. Greenwood.

Before HOGGE, HOWERTON and VANCE, JJ.

HOWERTON, Judge.

Dallas Moore, Orvile Smith, Ivan Louden, and Morris Garrett are magistrates in Trimble County, Kentucky; and, together with the county judge, they constitute the fiscal court. The magistrates appeal from a writ of mandamus issued by the Trimble Circuit Court ordering them to set a health tax rate of four (4) cents per $100 assessed property value. The rate had been established and requested by the Trimble County Board of Health, pursuant to KRS 212.725. The judgment also directed the appellee, Robert Moore, as county court clerk, to prepare the 1978 tax bills with the four-cent levy. Moore has not appealed from that judgment. The action was dismissed as to the appellee, County Judge Clyde Greenwood. As a member of the Board of Health and as chairman of the fiscal court, he supported the four-cent levy. Finally, the magistrates were ordered to personally pay the cost of this action which had been initiated against all of the parties herein by the plaintiff-appellee, Trimble County Board of Health.

On April 14, 1978, the Board of Health determined that the previous levy of 3.1 cents was insufficient to produce the revenue required to meet the public health needs in the county. A resolution was unanimously passed imposing a health tax rate of four cents, the maximum allowed by law. Only four of the seven members were present at the meeting. The resolution was approved by the Kentucky Department for Human Resources on May 1, 1978. The resolution was copied on a printed form for such purposes, and the document was signed by each of the four members who had approved its passage as well as the appropriate officer for the Department for Human Resources. However, the certification had not been completed by the Board secretary at the time the document was forwarded to the fiscal court.

The fiscal court met on September 28, September 30, and October 9, 1978, and each time the magistrates refused to set a rate higher than 3.1 cents. The Board of Health filed this action on October 21, 1978.

The magistrates have presented several allegations of error. We will not attempt to list each of them, but we will consider all of them in the order in which they were argued.

First, we find no reversible error in the trial court's refusal to permit the magistrates to depose the members of the Health Board. Even if we determined it would be proper for the magistrates to delve into the motives and factual reasons for the decision to raise the rate to the maximum amount of four cents, we cannot say that the trial judge abused his discretion in denying the request. CR 26 and CR 30. The court had ample reasons to deny the request on the grounds of relevancy, timeliness, delay in the proceedings, expense, and because the

information desired was either public record, stipulated, or offered to be provided by the Board of Health at the court hearing, which was already scheduled.

■ The magistrates next complain that the trial court had no authority to order the county court clerk to place a four-cent health tax rate on the tax bills, since they had not approved the rate. The clerk was made a party and indicated that he would prepare the tax bills according to directions received from the circuit court. KRS 68.-100 provides for tax levies to be adopted by the fiscal court, but if the trial court has the authority to require the fiscal court to levy the health tax rate, and we conclude that it does, then requiring the clerk to prepare the bills merely recognizes that what has been ordered to be done will be done.

■ The magistrates argue that the court costs should have been assessed against the fiscal court rather than against them individually, citing *Hogan v. Glasscock,* Ky., 324 S.W.2d 815 (1959). *Hogan* was an action by taxpayers to recover school funds expended for attorney fees and court costs in an action against the school board members. The case holds that the members have implied authority to employ an attorney and expend school funds to defend such actions. If the action does not concern individual responsibilities or malfeasance, a defense is necessary to accomplish the purpose for which the board was created.

In this case, the action was to require the members to perform a duty required by KRS 212.725. The court determined that the magistrates had failed to carry out their statutory duty, and the record is void of any reason for their refusal to act. The validity of the Board's resolution was never questioned until after the suit was filed. Good faith by the magistrates is certainly questionable due to their refusal to follow the advice of the county attorney, and because of their publication of a newspaper ad designed to create a public controversy with the tax increase.

We find a genuine distinction between the situation in *Hogan, supra,* and in this case. We cannot say that the trial judge abused his discretion in requiring the magistrates to pay the cost. KRS 453.040 and CR 54.04. *See also, Mooney v. Denhardt, Judge,* 144 Ky. 263, 137 S.W. 1059 (1911), authorizing the imposition of costs against a public official, and *see Board of Aldermen of City of Ashland v. Hunt,* 284 Ky. 720, 145 S.W.2d 814 (1940), concerning the effect of good faith.

The magistrates' most troublesome and serious allegation is that it was error for the trial court to issue the mandamus against them. The argument is not based on the appropriateness of mandamus or the power of the court. Instead, they attack the validity and enforceability of the Board's resolution on three grounds. First, they argue that the resolution was not "duly certified" as is required by KRS 212.-725. Secondly, they contend that the resolution was premature, since it was considered and passed before the Department of Revenue certified the total amount of assessments for Trimble County in 1978. Finally, they allege that the resolution was not properly adopted by a majority of the members of the Board of Health.

■ KRS 212.725 provides that the Board of Health shall determine the health needs in the county, and if adequate funds are not otherwise appropriated, it shall establish a tax rate to meet the financial requirements. The Department for Human Resources must approve such action by a health board, and when such is done, a certified copy of the resolution is forwarded to the fiscal court which is then required to include the rate in the county's tax levy, along with levies for school districts, fire districts, and other taxing jurisdictions. The appropriate part of the statute reads, "The fiscal court shall upon receipt of a *duly certified copy* of said resolution include in the next county ad valorem tax levy said public health tax . . . ." *(Emphasis added.)*

The resolution was passed on April 14, 1978. The four members present and vot-

ing signed the copy of the resolution. No official certification was added to any circulated copy until October 21, 1978, when the petition for mandamus was filed. The resolution was approved by the Department for Human Resources on May 1, 1978, and a copy of the form was mailed to Judge Greenwood on May 5, with directions to forward it to the fiscal court. The trial judge made no finding as to when the county court clerk received the copy on behalf of the fiscal court, but he did find that it was received prior to the time of the meetings when the tax rates would be adopted.

Failure to "duly certify" can be a fatal error. In *Miracle v. Commonwealth, Department of Highways,* Ky., 467 S.W.2d 757 (1971), an appeal to the circuit court was dismissed in a condemnation proceeding for failure to file a "certified" copy of the county court's judgment. The method for perfecting the appeal was statutory, and strict compliance was necessary when the issue was properly raised. Certification was necessary for the court to acquire jurisdiction, and the certification would show the order book and page number and that the judgment had been officially entered in the records and signed by the county judge.

*Miracle* can be distinguished from this case, however, just as it was distinguished from *Ennis v. Adkins,* 274 Ky. 121, 118 S.W.2d 175 (1938). The need for "certification" in *Ennis* was to assure the sheriff of the authenticity of an order. Jurisdiction was not involved. An "attested" copy of a court order was delivered to the sheriff for publication. The court found the argument that the copy was not "certified" to be frivolous, and concluded that the attested copy satisfied the requirement of the statute which specified a certification.

We conclude that authenticity is all that was intended or required by the legislature when it adopted KRS 212.725. No one to this day has questioned the fact that the resolution was authentic. The magistrates merely took it upon themselves to determine an appropriate health tax rate. The omission of the certification could have been corrected at any time, if the county

attorney, or anyone, had notified the Board of the deficiency. The Board should have been notified, if anyone intended to object to the resolution on the basis that it was not "duly certified." Adding strength to this point is the case of *Holmes v. Hume,* Ky., 424 S.W.2d 824 (1968). *Holmes* involved a mandamus to compel a fiscal court to levy a library tax. It was decided that a fiscal court cannot arbitrarily deny or ignore a petition filed with it, and if technical deficiencies are found to exist, the court is obligated to inform those who filed the petition. The mandamus was issued, and the case was affirmed.

The magistrates' argument concerning the lack of certification can be rejected on the basis of estoppel or waiver. The requirement for certification is for proof of authenticity rather than a jurisdictional necessity. Authenticity has not been questioned, the document is in fact genuine, and the lack of certification could have been corrected with reasonable notification. We will not support the objection under these circumstances at this time.

The magistrates' argument that the resolution was adopted prematurely is based on KRS 133.185, which provides that no tax rate shall be determined before the county assessment is certified by the Department of Revenue. The point might have had some merit, since no new resolution was passed by the Board setting or ratifying the rate after the assessments were certified in September. We decline to consider the issue, however, since it was not presented to the trial court. It cannot be raised for the first time on this appeal.

▮ The final argument challenging the validity of the resolution is that it was not legally adopted by a majority of the Board members. The Board has seven members. The resolution was voted on by four people. The allegation is that one of the voters was no longer a member.

Virginia Harmon, a voting member, became a trustee for the City of Bedford in January, 1978. The office is incompatible with membership on the Board of Health. KRS 61.080. KRS 61.090 provides that "the

acceptance by one in office of another office or employment incompatible with the one he holds shall operate to vacate first." The magistrates argue that Mrs. Harmon vacated her position, and the resolution was never legally passed.

We conclude, however, that Mrs. Harmon did not automatically forfeit and vacate her Board membership, and that at the very least, she was a de facto member and was entitled to perform her duties while in possession of the office.

KRS 61.090 does not function automatically to oust one from office. If the office is not voluntarily vacated or abandoned, some notification and ouster proceedings are necessary. *Commonwealth ex rel. Steller v. Livingston,* 171 Ky. 52, 186 S.W. 916 (1916); *Board of Education of Wurtland Independent School District v. Stevens,* 261 Ky. 475, 88 S.W.2d 3 (1935); and *Commonwealth ex rel. Breckinridge v. Winstead,* Ky., 430 S.W.2d 647 (1968). Mrs. Harmon was never notified of a problem of incompatibility, and no ouster proceedings were ever initiated against her. She completed her term as a Board member without other complications.

Mrs. Harmon was at least a de facto officer, and her vote and presence were properly counted. *Livingston, supra,* and *Winstead, supra. See also, Petrey v. City of Hazard,* Ky., 346 S.W.2d 534 (1961). A de facto officer is "one who is in the actual possession and administration of the office, under some colorable or apparent authority, although his title to the same . . . is in reality invalid, or at least formally questioned." Black's Law Dictionary, 1235 (4th ed. 1951). The purpose of the creation of a de facto officer is to prevent invalidation of all official acts which occur while the officer is holding an office. If a de facto officer cannot constitute a quorum or perform official duties, then such appears to negate the purpose of such office.

The magistrates cite *Board of Education of McCreary County v. Nevels,* Ky.App., 551 S.W.2d 15 (1977), as authority for their contention that the vote of a de facto officer may not be counted. *Nevels* is distinguish-able in several ways, and it is inapplicable to this case. Two votes by the same de facto school board member were considered. At the time of the first vote, which was to renew Nevels' contract as superintendent, an election contest had been initiated involving the member, Vina Brown. It was determined that their vote was not essential to the contract renewal. The opinion also concluded, however, that if her vote had been needed, and since the election contest was pending and the de facto member, Mrs. Brown, ultimately lost, Nevels' renewed position as superintendent would have been no better than de facto. Mrs. Brown's second vote, which was to appoint Nevels as secretary of the Board, was needed but disallowed. At that time, the election contest had been decided, although the mandate had not been issued. The court also reasoned that the vote was not on an urgent matter, and it was taken primarily to defeat the desires of the duly-elected school board members.

For the foregoing reasons, the judgment of the Trimble Circuit Court is affirmed.

All concur.