**Semonin T. MOORMAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2009–SC–000420–MR.**

Supreme Court of Kentucky.

Nov. 18, 2010.

Steven Jared Buck, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Kenneth Wayne Riggs, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Semonin T. Moorman, appeals as a matter of right[1] from a judgment entered upon a jury verdict convicting her of first-degree manslaughter and sentencing her to twenty years' imprisonment.

In this appeal she raises two arguments. First, that her conviction is invalid because one of the assistant Commonwealth's attorneys involved in her prosecution had not been properly sworn in as a member of the Kentucky bar, and was therefore an unlicensed attorney at the time of trial; and second, that the trial court erred when it disallowed evidence of the alleged victim's violent behavior which Appellant claims was relevant to her use of self-defense; and, that the trial court erred by disallowing evidence relating to the victim's prior drug use.

For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the light most favorable to the verdict, the facts relevant to this appeal are as follows. On the afternoon of July 28, 2007, Patricia Shoulders went to the residence of Tasha Bryant. Shoulders, who appeared to have no serious injuries, told Bryant that she had just been in a fight and wanted to use the telephone. As they talked, Appellant, with several other persons, approached the Bryant residence. When Appellant demanded that Shoulders come off the porch, Shoulders responded, "No Tasha, I don't want to fight anymore, I don't want to fight them anymore." Appellant then went onto Bryant's porch armed with a knife and began fighting with Shoulders. Bryant saw a knife in Appellant's hand as she approached. After several minutes of fighting, Appellant left and Shoulders, obviously wounded, slumped over onto Bryant's knees. Shoulders was transported to the hospital, where she was pronounced dead. The cause of death was a stab wound. A knife with Shoulders's blood on it was found in Bryant's yard.

Appellant was indicted for Shoulders's murder. At trial, she claimed that prior to the scuffle on Bryant's porch, Shoulders had attacked her from behind with a hammer in the Iroquois housing project across the street from Bryant's residence; that she stabbed Shoulders then to ward off the attack; and that she did so in self-defense. The medical evidence established that the stab wound was a deep wound to Shoulders's left lung and right ventricle of her

---

1. Ky. Const. § 110(2)(b)

heart, and that the wound was an "immediately life threatening injury." Appellant does not challenge the sufficiency of the evidence to support her conviction. At the conclusion of the trial, the jury convicted Appellant of first-degree manslaughter.

## II. THE INVOLVEMENT OF AN UN-LICENSED ATTORNEY IN APPELLANT'S TRIAL WAS HARMLESS ERROR

■ Appellant first contends that her conviction was improper because an unlicensed attorney participated in the presentation of the Commonwealth's case against her. While she has identified no specific prejudice resulting from his participation in the trial, she argues that the error was structural, and is therefore not subject to harmless error analysis.[2]

At the final sentencing hearing, it was disclosed to the trial court that, at the time of the trial, Logan Sims, one of the two assistant prosecutors who presented the case against Appellant, had not been properly admitted to the Kentucky Bar pursuant to SCR 2.120. The other assistant prosecutor who tried the case, Arthur McLaughlin, was properly licensed as an attorney.

It is uncontested that Sims passed the Kentucky bar examination in October 2008, but was out of the country at the time of the formal swearing-in ceremony before the Kentucky Supreme Court. When he returned, a circuit court judge administered the constitutional oath to him and he began working in the Commonwealth's attorney's office.[3] Sims and the judge who administered the oath were apparently unaware of SCR 2.120, which in relevant part provides:

> When an applicant is approved for admission [to the bar] that applicant must apply for and be granted a certificate of admission prior to engaging in the practice of law in this state. As prerequisites for the issuance of such a certificate an applicant ... *shall be administered the Constitutional Oath of Office either by a Justice of the Supreme Court or by the Clerk of the Supreme Court.* Upon completion of the prerequisites, the Clerk shall deliver to the applicant a certificate of admission on a form approved by the Court, and the issuance of the certificate shall be duly recorded by the Clerk.

(emphasis added).

After the trial, Sims learned from the Kentucky Bar Association that the admin-

---

**2.** The Commonwealth argues that this issue is not properly preserved because Appellant failed to obtain a ruling from the trial court upon the issue. Although Appellant did not specifically request any relief from the trial court relating to the issue, she made clear that she sought to preserve the issue for appellate review, and the Commonwealth specifically stipulated that the issue was preserved. In light of the Commonwealth's stipulation, we will treat the issue as preserved and address the argument on the merits.

**3.** In its brief the Commonwealth states, "When Sims was hired by the Commonwealth Attorney, he was administered the required oath for *that office.*" (emphasis added) During the discussion at the sentencing hearing, the Commonwealth stated that Sims was "sworn

in by a circuit court judge" and "thought one substituted for the other," in context meaning that being sworn in by a circuit judge substituted for the oath administered by a justice of the Supreme Court or the Clerk of the Supreme Court. Accordingly, the record discloses no basis for the Commonwealth's statement that the circuit judge administered the oath for the office of assistant commonwealth's attorney as opposed to the constitutional oath for admission to the bar. In her brief Moorman states that when Sims "began working in the commonwealth's attorney's office, he went before a circuit court judge to be "sworn into the bar." We will base our review upon Moorman's concession that the oath administered to Sims by the circuit court was the constitutional oath for bar admission.

istration of the oath by the circuit court judge was insufficient for his admission into the bar. The Commonwealth concedes that Sims was not properly admitted to the bar at the time of the trial. Appellant does not contend that Sims or the Commonwealth's attorney had any knowledge of the mistake, or otherwise acted in bad faith. When informed of the error, Sims's work at the Commonwealth attorney's office was suspended until the oath was administered in accordance with the rule.

KRS 15.760(3) provides, in relevant part, that *"All assistant Commonwealth's attorneys shall be licensed practicing attorneys."* (emphasis added). Because Sims had not complied with the oath requirements of SCR 2.120, he was not properly licensed during Appellant's trial. For this reason, error occurred as a result of his participation in the trial as an assistant Commonwealth's attorney, even if as the Commonwealth suggests, his role at trial was subordinate to that of the other prosecutor, Mr. McLaughlin.

The Kentucky Constitution Section 228 specifies who is required to take the constitutional oath, and the form of the oath:

Members of the General Assembly and all officers, before they enter upon the execution of the duties of their respective offices, *and all members of the bar, before they enter upon the practice of their profession, shall take the following oath or affirmation:* I do solemnly swear (or affirm, as the case may be) that I will support the Constitution of the United States and the Constitution of this Commonwealth, and be faithful and true to the Commonwealth of Kentucky so long as I continue a citizen thereof, and that I will faithfully execute, to the best of my ability, the office of ... according to law; and I do further solemnly swear (or affirm) that

since the adoption of the present Constitution, I, being a citizen of this State, have not fought a duel with deadly weapons within this State nor out of it, nor have I sent or accepted a challenge to fight a duel with deadly weapons, nor have I acted as second in carrying a challenge, nor aided or assisted any person thus offending, so help me God.

(emphasis added). Significantly, however, our Constitution is silent upon the issue of *who* may or must administer the oath. Section 116 of the Kentucky Constitution directs that the Supreme Court, "shall by rule, govern admission to the bar and the discipline of members of the bar." SCR 2.120 is a clear manifestation of that constitutional directive.

■ Though there was error relating to Sims's participation in the trial, it is fundamental that "no error or defect in any ruling ... or in anything done or omitted by the court ... is ground for granting a new trial or for setting aside a verdict ... unless it appears to the court that the denial of such relief would be inconsistent with substantial justice." RCr 9.24. Moreover, we "must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." *Id.* "Virtually all errors, therefore, are subject to harmless error analysis." *Crossland v. Commonwealth,* 291 S.W.3d 223, 231 (Ky.2009).

■ Appellant argues that this case presents a matter of structural error and is not subject to harmless error analysis. "Structural" errors are errors "which are, per se, reversible because they undermine the fundamental legitimacy of the judicial process." *Id.* at 232. Structural errors are, therefore, not subject to harmless error analysis at all. "In such cases, the error 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'"

*Washington v. Recuenco*, 548 U.S. 212, 219, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (citation and footnote omitted).[4]

We are unable to discern any federal constitutional provision which implicates the right of a defendant to be tried by a licensed attorney. Moreover, because Section 228 of our Constitution provides only that the oath must be administered prior to entering the practice of law, without directing who must administer the oath, that fact that Sims swore the prescribed oath before an official generally authorized to administer oaths [5] avoided constitutional error. Thus, we cannot construe Sims's participation in the trial as an error of constitutional magnitude. Having the required educational background, and having passed the Kentucky Bar exam and the character/fitness review, he was otherwise competent to participate in the trial. Certainly the participation of an ineffectively sworn prosecutor does not measure up to the substantial constitutional reasons found to be structural error in the cases listed above (see footnote 4). The error here did not render the trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Thus, we conclude that the error, in this case, was not structural, and is subject to harmless error review.

Appellant has identified no prejudice whatsoever as a result of Sims's taking the oath in means contrary to SCR 2.120. The manner in which he took the oath had no effect on his trial performance or the evidence presented, and the jury's verdict would have been the same. The status of Sims's law license played no part at all in Appellant's conviction. Thus, the error did not substantially sway the verdict, and is accordingly regarded as harmless. *See Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky.2009).

■ Additionally, we find that the longstanding *de facto* officer doctrine requires us to affirm the judgment.[6] In *Rice v. Commonwealth*, 66 Ky. 14, 3 Bush 14, 1867 WL 4050 (1867), a defendant in a criminal matter and his surety challenged the validity of a bail bond "because the police judge [before whom the bond was executed] had been qualified before a notary public who had no legal authority to administer official oaths." Kentucky's then highest court rejected the challenge, holding:

---

4. Among those types of errors which have been found to be structural are: *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); *see Recuenco*, 548 U.S. at 219 fn. 2, 126 S.Ct. 2546. *See also Payne v. State of Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession).

5. KRS 62.020(1) provides that "the official oath of any officer may be administered by: (a) any state or federal judge with Kentucky jurisdiction [.]" Judges in Kentucky, by specific statute, rule, or inherent authority to operate their courts generally have broad authority to administer oaths, but obviously lack the authority to induct new members of the bar.

6. *See Old Republic Ins. Co. v. Ashley*, 722 S.W.2d 55, 58 (Ky.App.1986): "[T]he appellate court may affirm the judgment if the record on appeal discloses any ground on which the decision could properly have been made."

"[W]hen a man is exercising and discharging the general duties of an office, claiming right thereto under a commission or appointment, he is an officer de facto; and generally, if not universally, his acts are good as to third parties, however irregular his appointment or qualification[.] ... We do not say that, even as the police judge was acting under a regular commission and appointment, that this oath would be void; *but if it was legally invalid as to himself, his acts as to third parties, are binding.*

(emphasis added)

More recently, in *Trimble County Fiscal Court v. Trimble County Bd. of Health,* 587 S.W.2d 276, 281 (Ky.App.1979), the Court of Appeals, upheld the validity of an action of a county health board despite the disqualification of a board member, stating, "Mrs. Harmon did not automatically forfeit and vacate her Board membership, and that at the very least, she was a de facto member and was entitled to perform her duties while in possession of the office.... Mrs. Harmon was at least a de facto officer, and her vote and presence were properly counted." The United States Supreme Court applied the *de facto* officer doctrine in *Ryder v. U.S.,* 515 U.S. 177, 180–181, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995):

"The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient.... The doctrine has been relied upon by this Court in several cases involving challenges by criminal defendants to the authority of a judge who participated in some part of the proceedings leading to their conviction and sentence."

It is beyond reasonable dispute that if the defective oath-taking invalidated Sims's admission to the bar and his office as an assistant Commonwealth's attorney, he was, nonetheless, a *de facto* officer. While an apparent violation of SCR 2.120 may be a matter of concern to this Court in its constitutional oversight of the practice of law in courts of Kentucky, it affords Appellant with no legitimate complaint as to the validity of her conviction.

Appellant and the Commonwealth have directed our attention to decisions of several states and federal courts that have considered this issue. We are satisfied that the opinion we reach today is consistent with a clear majority of those jurisdictions. We stand, however, not upon the numerical superiority of the courts that agree with us, but upon the superior foundation of law and reason upon which such decisions are based. Appellant is entitled to no relief under this argument.

## III. THE TRIAL COURT DID NOT ERR IN EXCLUDING EVIDENCE RELATING TO HER FEAR OF THE VICTIM

As part of her case-in-chief, Appellant sought to introduce evidence concerning Shoulders's prior drug use and prior threats of violence directed against various other persons, but of which she was not aware. The trial court ruled that the defense could introduce evidence of specific violent acts or threats made by Shoulders to Appellant, but that it could not use general reputation evidence of Shoulders's propensity to violence.[7] The trial court also ruled that Appellant could introduce evidence of Shoulders's drug use in the

---

7. As discussed below, the trial court's ruling excluding Shoulders's public reputation for violence (as opposed to specific acts) was error. Appellant however, does not raise this ruling as a point of error, and thus we deem the argument to be waived.

twenty-four hours prior to the stabbing, but could not introduce evidence concerning her substantial prior history of drug abuse. Appellant presented the excluded evidence through the avowal testimony of five witnesses.

### A. Prior Threats Heard By Other Persons

■ Avowal testimony was presented that the day before the stabbing Shoulders stated "when I see the red bitch [referring to Appellant] I'm going to beat her with this hammer"; that on the morning of the stabbing she was twirling a hammer saying "I can't wait until this red bitch get up. I'm gonna whoop her ass"; that Shoulders frequently threatened people with a hammer; that Shoulders always carried a weapon—usually a razor or a hammer; that she threatened to cut people with a razor; that she once smacked a police officer on the back; that she threatened Appellant on a constant basis; that she threatened a hairdresser with a hammer; that she made various other threats to other people; and that she would call children "sissy dick bitch."

■ The principles relevant to prior violent acts and threats by the victim in a self-defense case were addressed in *Saylor v. Commonwealth*, 144 S.W.3d 812, 815–816 (Ky.2004), and are fairly summarized as follows. Generally, a homicide defendant may introduce evidence of the victim's character for violence in support of a claim that he acted in self-defense or that the victim was the initial aggressor. KRE 404(a)(2). Such evidence may only be in the form of reputation or opinion, not specific acts of misconduct. KRE 405(a). An exception exists, however, when evidence of the victim's prior acts of violence, threats, and even hearsay evidence of such acts and threats, is offered to prove that the defendant so feared the victim that he

believed it was necessary to use physical force (or deadly physical force) in self-protection, "provided that the defendant knew of such acts, threats, or statements at the time of the encounter." Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 2.15[4][d] (4th ed.2003). "Obviously, such evidence could not be used to prove fear by the accused without accompanying proof that the defendant knew of such matters at the time of the alleged homicide or assault." *Id.* (citing *Baze v. Commonwealth*, 965 S.W.2d 817, 824–25 (Ky.1997)). Appellant cites us to no evidence demonstrating that, at the time she stabbed Shoulders, she was aware of the specific acts of violence and the threats of violence described in the avowal testimony. As such, the avowal evidence was properly excluded.

### B. Prior Drug Use By Alleged Victim

■ Avowal testimony was also presented that Shoulders was a "crack whore"; that she used as much crack cocaine and marijuana as she could on a daily basis; that she let others use her residence to get high if they would provide her with cocaine; that she frequently used drugs; that she attempted to borrow money for drugs and became angry when anyone refused her; and that she would sell her food vouchers to get drugs.

In order to be admitted at trial, evidence must be relevant. KRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations

 

of undue delay, or needless presentation of cumulative evidence." KRE 403.

Evidence of Shoulders's habitual drug use was of minimal relevance to any issue in the trial. Since Appellant admitted to stabbing Shoulders, the only real factual issue was whether the stabbing occurred at Bryant's residence with Appellant as the aggressor, or across the street in the housing project in self-defense against Shoulders's hammer attack. The probative effect of Shoulders's history of heavy drug use was slight or non-existent. Accordingly, the evidence was excludable upon relevancy grounds alone.

As previously noted, however, the trial court permitted evidence of Shoulders's drug use twenty-four hours prior to the murder. Further, medical evidence was presented demonstrating through post-mortem blood and urine tests that she had recently used cocaine and marijuana. Also, Appellant testified to Shoulders' heavy drug use. In summary, significant evidence of Shoulders's drug use was, in fact, presented, and the jury was aware that she was a habitual drug user. Additional testimony upon the issue would have amounted to a "needless presentation of cumulative evidence." *See Hillard v. Commonwealth,* 158 S.W.3d 758, 762–63 (Ky.2005) (evidence of victim's sexual history to prove sexual orientation was cumulative where testimony was already elicited concerning victim's prior sexual relationship with another witness). We conclude that the trial court did not abuse its discretion in excluding the additional evidence of Shoulders's prior drug use. *Love v. Commonwealth,* 55 S.W.3d 816, 822 (Ky.2001) (trial court's KRE 401 relevancy determinations and KRE 403 prejudice determinations are reviewed under the abuse of discretion standard).

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. All concur.